(February 19, 1904.)

## STATE v. CHAMBERS.

### [75 Pac. 274.]

CRIMINAL LAW—READING INFORMATION AND STATING PLEA TO JURY—
URGING JURY TO AGREE—PREJUDICIAL ERROR.

1. Under section 7855, Revised Statutes, which provides that where the indictment or information charges a felony, "the clerk must read it, and state the plea of the defendant to the jury," a failure to read the indictment or information, and state the plea by the clerk or any officer of the court is reversible error.

2. On trial of a felony case, the jury, after having deliberated for considerable time, returned into court for further instructions, and thereupon the court gave them some directions and sent them back to the juryroom. On the following day they came into court and announced that they could not agree, whereupon the court reminded them of the great expense of such a trial to the county, and admonished them to meet in a proper spirit of inquiry and investigation, and try to get together and not to have too much pride in their individual opinions, and that it did not seem to him that the case involved a great deal of difficulty, and then sent them back to the juryroom. After again remaining out for some time, they returned into court and announced that they could not agree, whereupon the court again admonished them and reiterated practically all he had before said to them, and told them that they should accommodate themselves to the condition of affairs and come to an agreement, and that the administration of justice. demanded it, and thereafter the jury returned and brought in a

verdict of guilty. *Held,* that such instructions, admonitions, and urging by the judge were reversible error.

3. *Held, further,* that a verdict returned under such circumstances does not represent the fair and deliberate judgment of the jury.

.(Syllabus by the court.)

APPEAL from District Court in and for Elmore County. Honorable Lyttleton Price, Judge.

Defendant was convicted of the crime of forgery, and from the judgment and an order denying his motion for a new trial, he appeals. Reversed.

E. M. Wolfe, for Appellant, cites no authorities on the points decided not found in the opinion.

John A. Bagley, Attorney General, for the State.

The information was not read to the jury by the clerk or any other person, and the jury was not informed of the plea of the defendant. No objection was made by the defendant to this irregularity at the time of the commencement of the trial or at any time during the trial. It does not appear that any injury resulted to the defendant by this irregularity. After the jury were impaneled, and before the introduction of any testimony, the county attorney made a statement of the case to the jury. At the close of the testimony for the state the defendant's attorney made an opening statement of their defense. This is not such an irregularity as will warrant this court in ordering a new trial. (*Territory v. Hargrave,* 1 Ariz. 95, 25 Pac. 475; *Osgood v. State,* 64 Wis. 472, 25 N. W. 529; *People v. Sprague,* 53 Cal. 491.) Urging the jury orally to agree: No objection was made by the defendant to the action of the court at the time and no exceptions were taken or assigned. There are no objections made or exceptions saved in the record as to this matter. The trial judge is vested with much discretion in the conduct of judicial proceedings. (*Hannon v. Hallifax,* 89 N. C. 123.) He may properly admonish the jury as to the desirability and importance of agreeing on a verdict, and may urge them to make every effort to do so,

consistent with their conscience. (11 Ency. of Pl. & Pr. 384, cases cited in note 3; *Commonwealth v. Kelley,* 165 Mass. 175, 42 N. E. 573; *Kelly v. Emery,* 75 Mich. 147, 42 N. W. 795; *Jackson v. State,* 91 Wis. 253, 64 N. W. 838; *Allis v. United States,* 155 U. S. 117, 15 Sup. Ct. Rep. 36, 39 L. ed. 91, 60 Ark. 45, 28 S. W. 792; *People v. Stock,* 1 Idaho, 218; *State v. Dudoussat,* 47 La. Ann. 977, 17 South. 685; *Odette v. State,* 90 Wis. 258, 62 N. W. 1054.) He may advise jurors to lay aside their pride of judgment (*Frandsen v. Chicago,* 36 Iowa, 378; *Warlick v. Plonk,* 103 N. C. 81, 9 S. E. 190), and not to adhere to an opinion, regardless of what the other jurors say, merely through stubbornness (*Jackson v. State,* 91 Wis. 253, 64 N. W. 838; *Odette v. State,* 90 Wis. 258, 62 N. W. 1054) ; to examine any existing difference in a spirit of fairness and candor (*Frandsen v. Chicago,* 36 Iowa, 372), and to reason together and talk over and harmonize them if this be possible. (*Jackson v. State,* 91 Wis. 253, 64 N. W. 838; *Odette v. State,* 90 Wis. 258, 62 N. W. 1054.) And the court may urge as reason for agreeing on a verdict the time and expense involved in a trial, and the time and expense which a new trial will entail. (*State v. Gorman,* 67 Vt. 371, 31 Atl. 845; *Pierce v. Rehsuff,* 35 Mich. 53; *Kelly v. Emery,* 75 Mich. 147, 42 N. W. 795; *Allen v. Woodson,* 50 Ga. 53.) As to the form of admonition as has been given and approved, see the following: *Allen v. Woodson,* 50 Ga. 63; *Nile v. Sprague,* 13 Iowa, 198; *Parker v. Georgia,* 83 Ga. 539, 10 S. E. 239; *Cranston v. New York Central,* 103 N. Y. 614, 9 N. E. 500; *Ahearn v. Mann,* 60 N. H. 472; *Whitman v. Morey,* 63 N. H. 448, 2 Atl. 899.

STOCKSLAGER, J.—The defendant in this case was convicted in the district court in and for Elmore county, upon the charge of forgery, and has appealed from the judgment and from an order denying his motion for a new trial. The first error complained of is founded upon the following statement contained in the bill of exceptions: "Before the taking of testimony neither the clerk nor any other officer of the court read the information to the jury or informed it of the plea of

defendant thereto, and the same was not done at any time." It is contended by counsel for defendant that under the provisions of section 7855, Revised Statutes, a failure to read the information to the jury and state the plea of the defendant before proceeding to the introduction of evidence was error. It is insisted that a failure to read to the jury the complaint or information made by the state against the defendant and the defendant's answer or reply thereto, which is designated by the statute the plea, left the jury without any issue to try, and that a verdict returned under those conditions should be set aside. Section 7855 provides as follows: "Section 7855. The jury having been impaneled and sworn, the trial must proceed in the following order: 1. If the indictment is for a felony, the clerk must read it and state the plea of the defendant to the jury. In all other cases this formality may be dispensed with."

It will be observed that the foregoing statute provides that in felony cases this procedure *must* be followed, and that in all other cases—that is, misdemeanor cases—it *may* be dispensed with.

The attorney general argues on behalf of the state that a failure to comply with this statute in such cases is a mere irregularity which will not warrant the granting of a new trial, and in support thereof cites *Territory v. Hargrave,* 1 Ariz. 95, 25 Pac. 475; *Osgood v. State,* 64 Wis. 472, 25 N. W. 529, and *People v. Sprague,* 53 Cal. 491.

We do not think the Arizona case is in point, for the reason that the record was there silent as to whether or not the information had been read and the plea stated to the jury. The court disposed of that point by saying: "In the absence of such statement, the presumption is that the indictment was read to the jury in the ordinary way. Legal presumption is always in favor of judicial proceedings until the contrary appears."

The Wisconsin case seems to support the position of the attorney general, but the question is summarily disposed of by the court without giving any reason for the ruling and without citing the statute upon which the contention was based. We

are therefore unable to ascertain whether that decision rested upon a statute similar to ours.

The California case does not seem to support the position of the attorney general, for the reason that it appeared by the record there that the jury were repeatedly informed of the substance of the indictment and the plea of the defendant in the course of impaneling the jury and the progress of the trial as well as in the opening statement of the district attorney. The court there said: "It appears from the bill of exceptions, however, that during the impaneling of the jury the substance of the indictment and plea were many times repeated; that in opening the case to the jury the district attorney stated the substance of the indictment and also defendant's plea thereto; that in the charge of the court the substance of the indictment and plea were again mentioned; and that the defendant made no objection to proceeding with the trial by reason of the failure of the clerk to read the indictment or to state the plea, nor in any way referred to the omission until after the verdict had been received and entered on the minutes, and the jury polled at defendant's request."

The identical question here presented was before the court of appeals of the state of Kentucky twice during the year 1901— *Farris v. Commonwealth,* 111 Ky. 236, 63 S. W. 615, and *Hendrickson v. Commonwealth* 23 Ky. Law Rep. 1191, 64 S. W. 954. In the former case the court said: "The bill of exceptions shows that the case was called for trial, and commonwealth and defendant announced 'Ready.' Then the jury was impaneled and sworn. The indictment was not read by the commonwealth's attorney, or the clerk of the court, or anyone else, before the trial began, or at any time during its progress. It is insisted that the case should be reversed for this reason. Section 219, Criminal Code Practice, reads as follows: 'The clerk, or commonwealth's attorney, shall then read to the jury the indictment, and state the defendant's plea.' This section refers to what shall next be done after the jury is sworn to well and truly try the issue. The indictment was not read, as we have said, and neither the clerk nor the commonwealth's attorney stated the plea of the defendant. This provision of the

code is mandatory. This court in *Galloway v. Commonwealth,* 4 Ky. Law Rep. 720, held that the requirement of the Criminal Code that the clerk or the commonwealth's attorney shall read the indictment and state the plea of the defendant to the jury next in order after they are sworn to try the issue is mandatory, and no party can be legally convicted unless it is substantially complied with. It also held that where the duty was performed before the close of the evidence for the prosecution, while it was still within the power of the court to recall the witnesses the substantial rights of the defendant were not prejudiced; nor was the mere fact that the indictment was read by the attorney employed to prosecute, instead of the commonwealth's attorney, a ground for a reversal; it having been done at the request of the latter officer, in the presence of the court and the defendant, without objection at the time. But in this case, as we have said, it was not read at any time by anyone, and for that reason the case is reversed for proceedings consistent with this opinion."

It will be observed from the foregoing that the Kentucky statute on this question is practically the same as ours.

It has been repeatedly held by the courts that a verdict of conviction will be set aside where the defendant has never been arraigned and no plea has been entered. (*People v. Corbett,* 28 Cal. 328; *People v. Monaghan,* 102 Cal. 233, 36 Pac. 511; *Crain v. United States,* 162 U. S. 640, 16 Sup. Ct. Rep. 952, 40 L. ed. 1097; *Pate v. State,* 21 Tex. App. 198, 17 S. W. 461; *People v. Gains,* 52 Cal. 479.) The courts hold to this theory upon the ground that there is no issue joined which the jury can try unless the defendant be informed of the charge and his plea be entered. If it be necessary to take the plea in order to have an issue to try, it seems to us that it must logically and necessarily follow that the jury should be informed as to what the charge against the defendant is and the nature of his plea thereto. Under section 7780, Revised Statutes, an issue of fact arises in a criminal case upon the defendant entering any one of three separate and distinct pleas. It would therefore seem to reasonably follow that the jury should be informed both of the charge made against the defendant and the nature

and character of the plea entered by him. But whatever the
reason may be, the question is fully answered by the statute;
the legislature have seen fit to say that the indictment *must*
be read and the plea stated to the jury, and in the face of this
declaration by the lawmakers we are not prepared to say that
its violation is immaterial and can be disregarded. While we
do not think it would make any material difference as to
whether the information was read and the plea stated by the
clerk or some other officer of the court, we do think that under
the express terms of the statute it must be done by someone.

The next error assigned by appellant is the action of the
trial judge in urging the jury to bring in a verdict and in-
structing them as to their general duties as jurors after they
had returned into court and announced that they could not
agree. This objection is best illustrated by here repeating the
history of all the proceedings from the time the evidence was
closed by both sides until the verdict was finally returned as
shown by the record. It is as follows:

"After argument by respective counsel, the court instructed
the jury, in writing, and the case was submitted to the jury,
and they were sent out in charge of a bailiff, duly sworn and
cautioned. Thereafter, about 9 o'clock P. M., of the same day,
the jury was brought into court and the defendant and his
counsel being present and the county attorney and other of-
ficers of the court, except the stenographer, who was absent.
The court asked the jury if they had agreed upon a verdict.
Their foreman answered that they had not; that they wished
certain instructions read to them, which being done, they re-
tired with the officer. Thereafter, on the evening of the same
day, the jury asked leave to come into court. They were
brought in, the defendant and his counsel being present, also
the officers of the court. The jury asked to have certain evi-
dence read to them, which was done by the stenographer; after
which the court, among other directions, gave the following,
orally, in substance, which were not taken down by the stenog-
rapher, and without consent of defendant: 'The court will not
receive a verdict after 12 o'clock. It is not my own incon-
venience so much as the fact that all the attorneys and officers

must be wakened up and brought into court.' The jury then retired with the officer, having been duly cautioned. On the next day, the 9th, about 9:30 A. M., the jury asked permission to come into court. They were brought in, the defendant and his counsel and the officer of court being present. The jury being asked if they had agreed upon a verdict, answered that they had not and had practically agreed to disagree, and the following occurred:

"The court, addressing Mr. Warrick, said: 'Do you think that this jury could agree or that further consideration would bring the jury together?' Warrick: 'I hardly think so.' Court: 'Have you made a strong effort to reach a conclusion, all of you?' Warrick: 'There has been a good deal of trying.' Court: 'Do you think, Mr. Brown, that there has been a willingness on the part of the jury to decide this case according to the testimony and the instructions of the court?' Brown: 'Yes, sir; I think that there has been an honest effort made to get the different factions together. From my observations I do not believe the jury could come together.' Court: 'I do not suppose that the matter of expense ought to enter into consideration; but you are aware, of course, all of you, that these things are very expensive to the county. You have now been out in the neighborhood of about twenty hours—twenty-three hours. I do not believe, gentlemen, that it is consistent with my duty to relieve you from your duty at this stage of the proceedings. I recommend you to meet in a proper spirit of inquiry, investigation and discussion and see if you cannot get together, and avoid, in the meantime, too much pride in your own opinions. As stated this morning, it does not seem to me that this case involves a great deal of difficulty. If all the jurors, in the consideration of a question of this kind, should get in a condition of mind where they would not agree, we could never get anything done. Courts would be a travesty and no business would be accomplished; rights of the state and rights of the individual would never be enforced. I think I will require you to return to your juryroom again and let you make another effort and see if you cannot get together. You may retire with the bailiff.'

Opinion of the Court—Stockslager, J.

"Given orally without defendant's consent.

"About 5 o'clock of the same day the jury was called into court by the judge and asked if they had agreed upon a verdict; replied that they had not; whereupon the judge said: 'I beg to call your attention to the fact that when a jury is called to try a case, it is not a matter in which there is to be any partisanship for one party or for the other; and there seems to be no good reason why you could not agree in a case like this. You are here to perform a public duty. It is a criminal case in which the public is very much interested, to protect the public against malefactors and for the protection of the defendant against unjust prosecution, and it seems to me that you should accommodate yourselves to the condition of affairs and meet upon a plane where you can dispassionately discuss the question involved and come to some conclusion. The administration of justice in this state demands it. These trials are expensive. Not only that, but they are inconvenient to men engaged in business who have to be taken from their homes and occupations and brought into court to devote their time to business for awhile for a compensation which does not compensate them, and the court feels it its duty to facilitate the public business as much as possible, and I shall require you to give this matter some further consideration and see if you cannot agree.' "

Counsel for appellant says: "This instruction could have but one effect—a verdict of guilty. Nothing is at stake but the public good. The great expense; the protection from malefactors and inconvenience to business men—I submit that these are not matters to load upon a jury's mind in the consideration of an important case."

It will be seen from the remarks made by the trial judge that he recognized the impropriety of the jury considering the public expense incurred by reason of the trial; but notwithstanding this fact, on two occasions he reminded them that the trial was being had at a great public expense. He also intimated to them very strongly that he did not consider they had been dispassionately discussing the question involved; and again, told them that it did not seem to him that the case involved

a great deal of difficulty; and further along said: "It is not a matter in which there is to be any partisanship for one party or the other, and there seems to be no good reason why you could not agree in a case like this."

Jurors should be allowed to pass on these cases without having any other consideration pressed upon them except the evidence introduced in the case and the instructions of law governing the same. The question of expense is a matter to be looked after by the court and its officers, and with that the jury have absolutely nothing to do. After the jury have returned into court and informed the court that they cannot agree in such a case, it is evident that some of them are for conviction and others for acquittal. They must also know, as men of common understanding, that it was the duty of the trial judge to advise them to acquit if he did not think the evidence sufficient to warrant a conviction, and when he did not so instruct them and yet told them that it was a simple matter about which there should be no difficulty or dispute, it must have been apparent at once that the court was of the opinion that there should be no difficulty in convicting the defendant. We do not think it is proper for the trial judge to advise a jury; after they have announced that they cannot agree, that it is their duty to yield up their personal views and not to have too much pride in their individual opinions. Such advice, if given along with the general instructions to the jury prior to their retiring to deliberate upon the matter, would not have the same effect as it must necessarily have after the jury have returned and reported that they cannot agree, for the reason that when the instructions are first given the jury have not yet heard the law in the case, and are not presumed to have formed any definite or fixed opinion as to the guilt or innocence of the defendant, but it is certain when they report that they cannot agree, that they have all formed quite fixed and definite opinions on the matter. The court erred in the course of his discussion with the jury upon their repeated returns into court; and while we are not inclined to single out any particular expression, which, standing alone, we should say is cause of reversal, taking the whole of these remarks together and the

circumstances and conditions as illustrated by this record, we have no doubt of its effect upon the jury. It is safe to say, with reasonable certainty, that this particular jury would never have returned a verdict in the case except for the repeated admonitions given them by the court. We do not think, under such conditions and circumstances, that the verdict returned represents the fair and deliberate judgment of the jury.

A great many authorities have been cited by the respective counsel in this case, and there is considerable discussion among the courts as to just when such remarks become prejudicial. It should be observed however, that in many of the authorities cited by the attorney general on this point the instructions as to the duty of jurors was given by the court in the first instance in the body of the general charges. It is true that in some of the cases the instructions were given after the jury had returned into court for further instructions. One of the best discussions on this particular question to which our attention has been called is found in *State v. Bybee,* 17 Kan. 462, where Mr. Justice Brewer, speaking for the Kansas supreme court, said:

"It seems to us, under these circumstances, that the remarks of the learned court were calculated to exert too strong a pressure upon the jury in favor of the agreement. It may not, perhaps, be possible to single out any particular sentence, and say that this is, strictly speaking, and taken by itself, erroneous, and sufficient to justify a reversal, though there are some that seem to trespass a good deal on the right and duty of each juror to the free exercise of his individual judgment. Yet the general impression of these instructions, as we read them, and, as it seems to us, must have been received by the jury, is, that the jury ought, by compromise and surrender of individual convictions, if necessary, to come to an agreement, and that a failure to do so would be an imputation upon both jury and court. Now, while a court may properly call the attention of the jury to many matters which increase the desirability of an agreement, such as the time already taken, the improbability of securing additional testimony, the general public benefit in a speedy close of a litigation, and, at least in cases

where the matters at stake are of minor importance, the question of expense to the parties and the public, yet no juror should be influenced to a verdict by a fear of personal disgrace or pecuniary injury. No juror should be induced to agree to a verdict by a fear that a failure to so agree would be regarded by the public as reflecting upon either his intelligence or his integrity. Personal consideration should never be permitted to influence his conclusions, and the thought of them should never be presented to him as a motive for action. Nor do we think the illustration given by the learned judge a happy one. A verdict is the expression of the concurrence of individual judgments, rather then the product of mixed thoughts. It is not the theory of jury trials that the individual conclusions of the jurors should be added up, the sum divided by twelve, and the quotient declared the verdict, but that from the testimony each individual juror should be led to the same conclusion; and this unanimous conclusion of twelve different minds is the certainty of fact sought in the law. Especially is this true in criminal trials. Here should no thought of compromise be tolerated. Before the state can fairly demand the conviction and punishment of an alleged criminal, the twelve jurors should each be led from the testimony to a clear conviction of his guilt."

The same question was considered in *State v. Ivanhoe,* 35 Or. 150, 57 Pac. 317, where many of the authorities are reviewed.

In *Randolph v. Lambkin,* 90 Ky. 552, 14 S. W. 539, 10 L. R. A. 87, it was said: "And as the actual finding shows evidence of a compromise of opinion, and yielding by some of the jury by their previous announced unalterable conviction, we think the verdict cannot be recorded as the result of deliberate judgment, and was brought about by the supposed paramount duty of the jury to agree upon a verdict, rather than by free, unbiased conviction of what their verdict should be; and, whenever the interference of the court seems to have had such effect upon the jury, the verdict ought to be set aside."

In *State v. Fisher,* 23 Mont. 540, 59 Pac. 919, the supreme court of Montana in considering this question announced their opinion as follows: "The judge should not have addressed the

jury as he did. It was improper for him to direct the attention of the jury to the expense incident to a new trial as a reason why they should reach a verdict. Whether this, of itself, requires a reversal, we do not decide. The more serious error lies in the intimation that the judge believed the defendant guilty. If he believed that the evidence was not of sufficient weight to sustain a verdict, the manifest duty of the court was to advise an acquittal; in other words, if the judge was of the opinion that the defendant, if convicted, should be granted a new trial because of the insufficiency of the evidence, the jury should have been advised to return a verdict of not guilty. . . . . If, in the opinion of the judge, the evidence was sufficient to warrant the submission of the case to the jury, the weight of the evidence was not for him to determine. It seems clear, also, that by the impromptu oral charge and comments the jury were given to understand that the judge entertained no doubt of the verdict which ought to be rendered, and the trend of his remarks was certainly calculated to impress the jury that, in his opinion, the verdict should be one of guilty. His opinion upon the weight of the evidence and the guilt of the defendant was not expressed in direct language, but it was implied."

To the same effect is *People v. Kindelberger,* 100 Cal. 367, 34 Pac. 852, and *People v. Sheldon,* 156 N. Y. 268, 66 Am. St. Rep. 564, 50 N. E. 840, 41 L. R. A. 644.

The question is also presented as to the propriety of the trial court giving these last instructions or directions to the jury orally, but since that question will probably not arise upon another trial of this cause, we express no opinion as to that point.

For the foregoing reasons the judgment must be reversed, and it is so ordered, and a new trial granted.

Sullivan, C. J., and Ailshie J., concur.