[Criminal No. 688.   Filed June 3, 1929.]

[278 Pac. 63.]

# JOHN   F.   PFEIFFER, Appellant, v.   STATE, Respondent.

See Criminal Law, 16 **C. J.**, sec. 2103, p. 833, n. 94; sec. 2562, p. 1091, n. 84; sec. 2563, p. 1091, n. 92; 17 **C. J.**, sec. 3597, p. 271, n. 31.

Indictments and Informations, 31 **C. J.**, sec. 375, p. 801, n. 61; sec. 385, p. 809, n. 2.

Messrs. Kingan & Darnell and Mr. John L. Van Buskirk, for Appellant.

Mr. K. Berry Peterson, Attorney General, and Mr. Charles L. Strouss, Assistant Attorney General, for the State.

ROSS, J.—John F. Pfeiffer was convicted of embezzling $1,213 belonging to Pima county during or while he was a deputy assessor of said county.

On this appeal he assigns errors as follows: (1) The denial of his motion to quash the indictment, the ground of said motion being that the grand jury that returned the indictment had no legal evidence before it but only incompetent testimony and hearsay. (2) A statement to the jury, under circumstances hereafter detailed, as follows: ''Now, gentlemen, we have been sitting on this case about two weeks now, and to have a mistrial of the case would be very, very undesirable. It is very desirable that the jury agree on some verdict in this case. It puts the county to a tremendous expense to try a case of this kind, and to have a mistrial is simply a waste of time. It seems to me that you twelve men ought to be able to get together in this case and agree on some verdict, and I am going to give you plenty of time to do it. I can stay here all the rest of this week if necessary.'' And (3) in refusing to grant a new trial upon his motion, presenting as grounds therefor the grounds of errors 1 and 2.

On the motion to quash the court heard evidence and decided against movant. If when it is charged by motion to quash that the grand jury had no evidence before it, or that all the evidence was hearsay, it is permissible procedure under our laws to take evidence thereon, we think, it appearing that some evidence was before the grand jury, the trial court's decision is conclusive. The statute, section 918 of the Penal Code of 1913, provides that a grand jury in its investigations can receive in evidence oral testimony of witnesses, legal documentary evidence, and depositions properly taken, but there is no provision as to the *quantum* of this evidence.

However, we do not think the question of the sufficiency or character of the evidence received by the grand jury can be raised by motion to quash. Section 971, Id., provides that the defendant upon his arraignment may move to set aside, demur or plead

to the indictment or information, and section 972, Id., enumerates the grounds upon which an indictment must be set aside. None of these grounds is the insufficiency or the hearsay character of the evidence received by the grand jury in its investigation of the charge against the accused. As we understand it, the statutory grounds for vacating or setting aside an indictment or information are exclusive. In *People* v. *Collins,* 60 Cal. App. 263, 212 Pac. 701, it is said that, where the statute expressly sets forth the grounds upon which an indictment may be set aside it cannot be set aside for any reason other than those mentioned. In effect we think that is the holding of this court in *Richardson* v. *State,* 23 Ariz. 98, 201 Pac. 845; *Thomas* v. *Territory,* 11 Ariz. 184, 89 Pac. 591.

The courts are not in agreement on this proposition as may be seen by an examination of *State* v. *Chance,* in 31 A. L. R. 1467, and note thereto at page 1479 (29 N. M. 34, 221 Pac. 183).

The details leading up to the court's statement, which is assigned as error No. 2, are set out in the Attorney General's brief, and we believe correctly, and are: "The case was submitted to the jury at 5:30 o'clock P. M., Wednesday, May 9, 1928. At about 9:30 o'clock Thursday morning, May 10, 1928, the jury was returned into court in charge of the bailiff. The judge asked the jury if a verdict had been reached and was informed by Juror Brinegar that it looked hopeless. The judge then informed the jury that he understood they had some request to make. Juror Brinegar replied that a few of the jurors desired that some of the instructions given be read to them. The judge then asked if any other jurors had any requests to make. Receiving no reply, the judge then made the statement here complained of, after which the instructions theretofore given were read in full to the jury." The jury then

retired, and at 4:30 P. M. of the same day returned a verdict of guilty.

It is contended by defendant (a) that the court's statement in effect told the jury that the judge would hold them over Thursday, Friday and Saturday, unless they agreed at an earlier date, and was therefore coercive. (In this connection we should explain that the judge presiding and who made the above statement was not the regular judge, but was one of the judges of the superior court of Maricopa county sitting in the place of the regular judge of Pima county. Hence the significance of the words: "I can stay here all the rest of this week if necessary.") (b) that it invaded the jury's province; and (c) that it was a comment by the judge upon the facts and the weight of the evidence. We will consider these features of the court's statement, so objectionable to defendant, in their reverse order.

The jury's province under our system of laws is to judge and determine the facts, and with the performance of this duty the judge is forbidden to interfere. When the Constitution was adopted in 1912 the supremacy and independence of the jury as the fact-finders was so jealously regarded that there was inserted in that instrument, as section 12, article 6, this language: "Judges shall not charge juries with respect to matters of facts nor comment thereon, but shall declare the law."

This provision is word for word section 16 of article 4 of the Constitution of the state of Washington, and probably was taken therefrom. The courts of the latter state have, in several cases in considering said provision, given expression to what the judge may or may not do or say in instructing a jury. The last case to speak of its meaning is *State* v. *Roberts,* 144 Wash. 381, 258 Pac. 32, and in it the court said: "The trial court is not forbidden to make reference

to the evidence, but is only forbidden to comment thereon.''

In *French v. Seattle Traction Co.*, 26 Wash. 264, 66 Pac. 404, is found the best exposition of that clause of their Constitution and the one most frequently quoted in subsequent cases. It is:

''What statements of the judge, in his charge to the jury, with reference to the evidence, will, and what will not, amount to a comment upon the facts within the meaning of the constitutional inhibition, are questions not always easy of solution; but it cannot be meant by this clause of the constitution that the court shall not refer to the evidence at all. Necessarily, his charge must be based upon the evidence, and he must 'declare the law' applicable to that state of facts which the evidence of either party tends to establish. In order to do this, the judge must refer to the evidence in some manner. We have said he may make such references hypothetically; that is, he may state to the jury, 'If you find from the evidence that such a state of facts exist, the law is as follows,' etc., although he may not state or assume in his charge that any particular fact is conclusively proven. *Bardwell v. Ziegler,* 3 Wash. St. 34, 28 Pac. 360; *State v. Walters,* 7 Wash. 246, 34 Pac. 938, 1098. If the judge may, in his charge to the jury, refer to the evidence thus indirectly, there would seem to be no very good reason why he may not do so directly; and we think, *so long as the reference made does not amount to an explanation or criticism of the evidence, or assert or assume that a particular fact is proven thereby, it matters little what form the reference takes.''* (Italics ours.)

By no plausible construction can it be said the court's statement to the jury standing alone was an explanation or criticism of the evidence or an assertion or assumption of any particular fact in the case. While the judge said in effect that he thought the jury ought to be able to agree on a verdict, there was no vocal intimation as to what that verdict ought to be other than ''some verdict,'' that is, either guilty

or not guilty. It is as easy to extract from the judge's language a desire for acquittal as a wish for conviction. We think the judge by his words very carefully and successfully hid from the jury his opinion as to what the verdict should be. It is the circumstances under which the statement was made that gives it a significance not apparent from the printed word. The defendant had at the close of the case, in the presence of the jury, moved for a directed verdict, which motion was denied. Sixteen hours after the jury had been considering of their verdict they returned into court and requested that the original instructions be read to them. It was then, and preliminary to reading the instructions, that the judge made the observations which defendant contends were a comment on the evidence. It is contended that, if there was no evidence of defendant's guilt, it was the duty of the court to have directed a verdict in his favor; that refusing to do so by overruling defendant's motion the judge indicated that, so far as he was concerned, he was satisfied of defendant's guilt, and that, when he said, "It is very desirable that the jury agree on some verdict . . . that you twelve men ought to be able to get together in this case and agree on some verdict," he meant, and the jury so understood, a verdict of guilty. While to the members of the bar the legal implication of an order overruling a motion for a directed verdict for defendant is not as stated, it might readily be to the members of the jury.

In *State* v. *Thield,* 36 Wash. 365, 78 Pac. 919, the jury, after being out eighteen hours, was brought into court and in answer to an inquiry stated that no agreement had been reached; that they stood eight to four, without indicating which way. The court said to the jury:

"It seems to me, gentlemen of the jury, that you ought to agree on a verdict in this case. You twelve

men know as much about this case as it is possible for any twelve men to know about it. Now, it is quite proper for each one to have his opinion, but it is your duty as jurors to reason together, and see if you cannot arrive at a verdict. Without in any way intimating what your verdict ought to be, because that is not my province, it does seem to me that this is a very plain case, and that you gentlemen ought to arrive at a verdict without any trouble whatever. I can't for the life of me, see any reason why twelve men would hesitate at arriving at a verdict in this case. As I said before, I am not intimating what your verdict should be. That is for you. But you certainly ought to reach a verdict in this case. You may go back to your room again, gentlemen of the jury, and see if you can't arrive at a verdict.''

The Supreme Court held that this was a comment upon the evidence indicating unmistakably the opinion of the judge that the defendant was guilty. The language was not widely different in meaning from that used in this case. It was there said:

''If there was no substantial evidence to go to the jury, it was the duty of the court to direct an acquittal and discharge the jury. If there was substantial evidence to go to the jury, it was the duty of the court to submit the case without comment upon the facts. Const., art. 4, § 16. In *State* v. *Crotts,* 22 Wash. 245, 60 Pac. 403, this court said: 'There are different ways by which a judge may comment upon the testimony within the meaning of the Constitution referred to above. The object of the constitutional provision doubtless is to prevent the jury from being influenced by knowledge conveyed to it by the court of what the court's opinion is on the testimony submitted. The Constitution has made the jury the sole judge of the weight of the testimony and of the credibility of the witnesses, and it is a fact well and universally known by courts and practitioners that the ordinary juror is always anxious to obtain the opinion of the court on matters which are submitted to his discretion, and that such opinion, if known to the juror, has a great influence upon the final determination of the issues. . . . There is no other Consti-

tution that we have been able to find that is as prohibitive of the action of the court in this respect as ours. Most of them are to the effect that the judge will not charge the jury in respect to matters of fact. Ours, it will be noticed, goes beyond that, and provides that they shall not comment thereon.' The remarks of the judge quoted above could mean but one thing to the jury, and that was that he believed the defendant was guilty. It is true, as argued by the prosecuting attorney, that the judge stated no fact. He even said, 'Without in any way intimating what your verdict ought to be, because that is not my province.' Yet he did intimate very plainly what his opinion was upon all the facts when he said: 'It does seem to me that this is a very plain case, and that you gentlemen ought to arrive at a verdict without any trouble whatever. I can't, for the life of me, see any reason why twelve men would hesitate at arriving at a verdict in this case.' . . . ''

*People* v. *Kindleberger,* 100 Cal. 367, 34 Pac. 852, was a case wherein the jury having deliberated for one hour requested further instructions and in compliance therewith the court, among other things, said:

'' . . . In view of the testimony in this case the court is utterly at a loss to know why twelve honest men cannot agree.''

In view of the duty of the judge to advise an acquittal when the evidence is clearly insufficient to justify a verdict of guilty, it was held that in all probability this statement was construed by the jury as a direction to find defendant guilty; that it was a comment on the evidence and prejudicial.

In *People* v. *Conboy,* 15 Cal. App. 97, 113 Pac. 703, the jury had deliberated for seven and one-half hours when it requested further instructions. In concluding the instructions the judge said:

'' 'Now, gentlemen, I think I have read to you about all the instructions you desire on these points, and I suggest to you that there is no reason

why 12 honest, intelligent, reasonable men should not reach a conclusion in this case, and I am surprised that you have not done so already. And I want to say to you that you should consider the evidence offered and admitted here and the law as given you by the court, and decide this case upon that, and not upon any personal observation or relations or experience that any of you may have had. Now, go out and do your duty.'

"These remarks," said the Supreme Court, "amounted to a plain intimation that the court thought the evidence in the case warranted a verdict of guilty, and that the jury should so find. If the evidence was insufficient to justify a conviction, it was the duty of the court to thus advise the jury. Not having so advised them, but, on the contrary, having told them that there was 'no reason why 12 honest, intelligent, reasonable men should not reach a conclusion' in the case, and having expressed surprise that they had not done so already, and thereupon having admonished the jury to 'go out and do its duty,' by this conduct it must be held that the trial court impliedly instructed and urged the jury to convict the defendant. Nothing is better known among lawyers than that juries rely with great confidence on the integrity and fairness of judges, and upon the correctness of their views. For this reason a judge should be careful not to throw the weight of his judicial position into a case, either for or against a defendant."

In *State* v. *Chambers,* 9 Idaho 673, 75 Pac. 274, comments or statements by the judge, after the case had been submitted to the jury, in the way of additional instructions, were held to be intimations of the judge's wishes for a conviction and prejudicial. Such statements were of the general nature of the ones here.

In *People* v. *Blackwell,* 81 Cal. App. 417, 253 Pac. 964, the court, among other statements, said to the jury:

"I think the jury ought to agree on a verdict. I think you better retire and deliberate further."

The Court of Appeals said of this:

. "Under all the circumstances, there is merit in appellant's contention that the statement of the court, 'I think the jury ought to agree on a verdict,' amounted to 'a plain intimation that the court thought the evidence in the case warranted a verdict of guilty, and that the jury should so find.' "

In the case before us when the jury announced that it was in hopeless disagreement, after some sixteen hours' deliberation, the court, among other things, said: "It seems to me that you twelve men ought to be able to get together in this case and agree on some verdict, and I am going to give you plenty of time to do it." We think this language, under the circumstances in which it was used, must have conveyed to the jury the thought that the judge believed the defendant guilty. It seems to us that, if we are to be controlled by precedent and by what appears to be the majority rule and especially the rule in jurisdictions where the organic law is like or similar to our own, we should hold that the court committed error in its statement to the jury, stressing the idea that they should agree upon a verdict, as being in the nature of a comment upon the weight of the evidence.

Defendant does not in point (b) particularize the respects in which the court's statement invades the province of the jury. The statement contains some trite facts just as well known to the jury as to the judge, as where he recalls the length of time consumed in the trial, its stupendous expense to the county, and the undesirability and waste of time in a mistrial. These observations were of things unrelated to the merits of the case, but pertaining more to jury duty.

We think the cases sustain the text in 16 C. J. 1091, section 2562, reading:

"It is proper for the court, after the jury have been deliberating for some time, to recall them to ascertain why they cannot agree, and to inquire as to whether there is any likelihood of an agreement. Provided nothing is said to coerce an agreement, or to indicate what verdict should be rendered, or that may be considered as an appeal to the jury to decide the case in some way even at the expense of honest convictions, the court may give the jury further instructions or advice calculated to assist them in coming to an agreement; may call their attention to the time taken in the trial and the great expense incurred therein, or which would be incurred by a retrial. . . . "

Was the court's language under the circumstances coercive? The jury had been out sixteen hours, from 5:30 P. M. Wednesday to 9:30 A. M. Thursday, and, as one of them said, it looked hopeless. They were divided. Some were for conviction, and some for acquittal. The judge being informed of the situation said, among other things: "It seems to me that you twelve men ought to be able to get together in this case and agree on some verdict and I am going to give you plenty of time to do it. I can stay here all the rest of this week if necessary." We think by his words the judge intended to say, and that the jury understood, he was through with the work that he had gone over to Tucson to care for and could go home except for the pending case, but if, by a failure to agree on a verdict, it was necessary for him to stay in Tucson the rest of the week, he was prepared to do it. He did not bluntly say: "I propose to hold you over the rest of the week, or three days more, unless you agree before the end of that time." But what he said is susceptible of no other interpretation.

In *People* v. *Sheldon,* 156 N. Y. 268, 66 Am. St. Rep. 564, 41 L. R. A. 644, 50 N. E. 840, the cases wherein trial courts had used expressions similar to the ones here complained of are reviewed, and

the conclusion there arrived at was that such comments were coercive and that verdicts rendered thereunder should be set aside. The court quotes Mr. Justice HARRIS' opinion in the early case of *Green v. Telfair*, 11 How. Pr. (N. Y.) 260, as expressing a correct reason why the judge should refrain from referring to the length of time he intends to keep the jury together, as follows: "An attempt to influence the jury by referring to the time they are to be kept together, or the inconvenience to which they are to be subjected, in case they are so pertinacious as to adhere to their individual opinions, and thus continue to disagree, cannot be justified. A judge has no right to threaten or intimidate a jury in order to affect their deliberations. I think he has no right to even allude to his own purposes as to the length of time they are to be kept together. There should be nothing in his intercourse with the jury having the least appearance of duress or coercion. . . . That, should they continue to disagree, they are not to be exposed to unreasonable inconvenience, nor to receive the animadversion of the court." See, also, 16 C. J. 1091, § 2563, and cases cited in footnotes; 16 R. C. L. 297, §§ 109, 110.

In *Canterbury v. Commonwealth*, 222 Ky. 510, 1 S. W. (2d) 976 (syl. 3), the "threat by trial judge, at time jury reported that they could not agree, to prolong their confinement for a period of ten days, *held* erroneous as calculated to coerce and control a weak and timorous juror." Of course everybody would concede that such a threat was coercive, and that a verdict given under the influence of it should be set aside.

As Judge BREWER (afterwards Justice of the Supreme Court) said in *State v. Bybee*, 17 Kan. 462, concerning the juror:

"Personal considerations should never be permitted to influence his conclusions; and the thought

of them should never be presented to him as a motive for action.''

The prospect of having to consider a case for three more days after sixteen hours had already been put in on it, away from one's home and family and business, might cause a juror to yield his conscientious convictions rather than suffer such prospect. No juror should be placed in that situation.

The judgment is reversed and the cause remanded, with directions to grant the defendant a new trial.

LOCKWOOD, C. J., and McALISTER, J., concur.