## 33047. CAMPBELL *v.* THE STATE.

DECIDED JUNE 28, 1950. REHEARING DENIED JULY 5, 1950.

*Dempsey Leach, Vaughn & Vaughn, William T. Dean, J. H. McCalla, R. Beverly Irwin, Young H. Fraser,* for plaintiff in error.

*Roy Leathers, Solicitor-General,* contra.

TOWNSEND, J. The plaintiff in error, R. P. Campbell, herein referred to as the defendant, was tried in the Superior Court of Rockdale County for murder. He was convicted of voluntary manslaughter and sentenced to serve not less than 6 nor more than 10 years in the penitentiary. He filed a motion for a new trial on the general grounds which was later amended by adding 6 special grounds numbered 4 to 9 inclusive.

Special ground 9 of the amended motion for a new trial contends that the trial court erred in giving the jury an additional charge containing a statement as follows: "The only thing I wish to say to you is to call to your attention and for your consideration in the light of all the evidence and the instructions given you by the court, that you take into consideration the time and expense that is necessary to have a trial like this." This additional charge was given by the court after the jury had deliberated for two days and failed to reach a verdict. Having the jury before him on this occasion, a colloquy took place between the court and one of the jurors as follows:

"The Court: 'Gentlemen of the jury, I want to propound a question to you and before I propound that question I want you to distinctly understand that I am not asking for any names; I am not asking how you stand; what your individual thoughts

are about this question you have before you, but I only want to ask this question. How do you stand numerically?' Juror: 'You mean how we voted?' Court: 'The division as to numbers, not for what you stand but just as to numbers. How are you divided?' Juror: 'Well, we are deadlocked and no decision arrived at.' Court: 'I say, what are the numbers?' Juror: 'Eleven to one.' Court: 'Well, thank you, sir. Gentlemen of the jury, of course I would not say anything in the world that would indicate that I was trying to coerce you into a verdict. *The only thing I wish to say to you is to call to your attention and for your consideration in the light of all the evidence and the instructions given you by the court that you take into consideration the time and the expense that is necessary to have a trial like this.* Of course, you are the exclusive judges of the facts in the case and the law, and you take the law as given you in charge and you apply it to the facts; whatever you see fit to do, that is your business, and your exclusive business, and I certainly did not mean to say anything that would indicate that I was trying to coerce this jury to return a verdict in the case. You return the kind of verdict that you believe would meet with the approval of your enlightened consciences.' " (Italics ours.)

It is error to inject into a case on trial any extraneous matter not in issue and unsupported by evidence, whether done by improper argument of counsel or by improper instructions on the part of the court. In the instant case, while the jury had adequate means for determining the amount of time necessary to try the case, there was no evidence upon which the jury could predicate any conclusion as to the expense of the trial. Had such testimony been offered and timely objection interposed, the rules of evidence require that it be ruled out bcause such evidence is wholly irrelevant and immaterial. *Stone* v. *State,* 118 *Ga.* 705 (7) (45 S. E. 630). It could not possibly have any bearing upon the guilt or innocence of the defendant, which was the issue to be determined in this trial. Instructions to the jury on a subject unsupported by any evidence and wholly irrelevant is error. *Culberson* v. *Alabama Construction Co.,* 127 *Ga.* 599 (1) (56 S. E. 765).

Not all error is reversible, and if the judge uses language in

his charge, although erroneous, it is not a ground for a new trial if such error is harmless. *Williams* v. *State,* 180 *Ga.* 595 (3) (180 S. E. 101). Had the verdict been demanded as returned by the jury, under the authority of *Hussey* v. *State,* 69 *Ga.* 54 (2), it is well settled that the error would be harmless. However, the evidence of the State and of the defendant here, including the defendant's statement, were in sharp conflict and a verdict of acquittal would have been authorized. Such erroneous instruction, therefore, was presumptively prejudicial and harmful. See *Wiggins* v. *State,* 14 *Ga. App.* 314 (6) (80 S. E. 724). No particular rule, however, can be laid down with perfect exactitude as to wherein error is harmful or harmless, and every case in this respect, subject to the general rules herein outlined, must be determined on its own facts. See *Peavy* v. *Clemons,* 10 *Ga. App.* 507, 511 (73 S. E. 756.)

In *Alabama Great Southern R. Co.* v. *Daffron,* 136 ˙*Ga.* 555 (1) (71 S. E. 799, 25 Ann. Cas. 1912 D, 438), it is held: "The court should not unduly press a jury to agree upon a verdict; and in the use of any remarks designed to impress the desirability of reaching a verdict, he should be careful to refrain from any expression of a coercive nature or which possibly may mislead them into an erroneous method of reaching a verdict. Upon being informed by the jury of their inability to agree upon the amount of recovery, the judge's instruction that. verdicts are mostly compromises, and his illustration of that statement, was prejudicial to the defendant; its tendency was to suggest that the jurors might arbitrarily compromise, divide, and yield for the mere sake of agreement."

In *Peavy* v. *Clemcns, s*upra, at page 512, it was held: "The verdict should be the result which all the jurors have unanimously come to, unaided and unassisted by the slightest intimation or suggestion by the trial judge; and the measure of the trial judge's discretion in asking for information from the jury in order to enable him to determine the likelihood of an agreement and the proper exercise of discretion in the declaration of a mistrial should be limited to the general inquiry: Is there an agreement, or is there likely to be an agreement? Beyond this formal and general communication between the judge and the jury relating to an agreement 'evil cometh.' "

Both the sentence immediately preceding and the sentence immediately following the erroneous part of the court's charge were devoted by the trial court to assurances that he was in no way attempting to coerce the jury. However, no amount of assurance can delete from the erroneous part of the charge some meaning. It either amounted to a tendency on the part of the trial court to coerce the jury, without evil design, to be sure, notwithstanding his assurances to the contrary, or it amounted to substantive instructions to the jury for their positive and affirmative consideration on an issue which is unauthorized by the evidence, which pertains to no issue in the case, and which has no probative bearing whatever on the guilt or innocence of the defendant on trial. Indeed, it may constitute both. Whether either or both, it is error.

Having determined the excerpt complained of in the special ground of the amended motion for a new trial under consideration to be error, let us now consider whether or not is was harmful. As previously stated, the jurors were in position to determine the amount of time consumed in the trial of the case, but were without any guiding rule as to the expenses thereof. They were citizens of Rockdale County, else they would not have been serving on the jury. No doubt some of them were taxpayers. It may fairly be assumed that all of them were neighbors, friends, and fellow citizens of taxpayers of Rockdale County. After two days of deliberation and at a time when it appeared that a mistrial was inevitable, a new issue was injected into the case—that of expense. It does not require an imagination of too great elasticity to picture the discussion in the jury room as the jurors, in accord with the judge's instructions, speculated upon the amount of expense another trial similar to the one in which they were then engaged would cost the taxpayers of Rockdale County. It cannot be said that in this case, where the evidence would have amply authorized a verdict of acquittal, that a consideration by the jury, under the authority and direction of the trial court, of the expense of the trial, did not enter into the verdict and bring about its rendition, adverse to the defendant, and consequently harmful to him. Counsel for the State relies upon *Gambo* v. *Dugas & Son,* 145 *Ga.* 614 (3) (89 S.E. 679); *Yancy* v. *State,* 173 *Ga.* 685 (5) (160 S.E.

867), and *Padgett v. State,* 176 *Ga.* 314 (168 S.E. 53). In the *Gambo* case, a charge that it was no credit to a juror to stand out in a pure spirit of stubbornness, and that it was the duty of every juror to consult with every other juror and reach a mutual understanding in the case, it was held that "this charge pressed the urging of the jury to agree upon a verdict to the utmost line permissible, and to the very verge of error." The *Yancy* case holds in effect that the judge may properly admonish the jury as to the importance of agreement, care being taken not to give any instruction having a tendency to coerce the jury into agreeing upon a verdict. With these opinions we heartily concur. In the *Padgett* case, Russell, C.J., dissenting, our Supreme Court held that it was not error requiring the reversal of the case for the trial court to have given additional instructions as follows: "I wish to say this to you: that I have very great respect for each and every one of you, and I am not going to unduly urge you. I am going to leave that to your patriotism—your sense of right and wrong; and I am not going to crowd you. *I am willing to give you any reasonable time that you think you need to make a verdict, but the case has taken a long time to try, and involves considerable expense and lots of trouble to a lot of people;* and I hope that you will all reason together in an honest endeavor to reach a verdict that is consistent with the truth, and let it be returned. I will ask you, kindly and considerately, and with the greatest respect, to go to your room and try to make a verdict consistent with the truth of the case, so that I can relieve you." (Italics ours.)

The wide distinction between the *Padgett* case and the instant one is that while, in the *Padgett* case, the court himself considered the time and expense element, apparently offering it as an excuse somewhat in the nature of an apology to the jury for not then declaring a mistrial, he did not call upon the jury to consider it themselves. Also, as previously pointed out, every case must stand on its own facts, and what may not have been harmful error in the *Padgett* case may be harmful error in other cases. Evidence in criminal cases is inadmissible unless it has some bearing on the guilt or innocence of the defendant. That is the only issue for the jury to determine. Direction on the part of the trial court, therefore, to consider the expense of the

trial, the same not being in evidence and having no bearing on this issue, must be held to be harmful and prejudicial.

We are not unaware that there are a number of States the decisions of which follow that of the *Padgett* case, and also that there are two cases (*Yancy* v. *State*, 173 *Ga.* 685, supra, and *McLendon* v. *State*, 205 *Ga.* 55 (5) 52 S. E. 2d, 294) in which our Supreme Court indicated that had such a charge been given it would not have been error. The commentaries in these cases, based upon a statement of the majority rule as found in Corpus Juris, are quite broad, but in neither case was any question presented as to the injection by the trial court of the issue of expense in his instructions to the jury. Since no such question was raised in these cases, the part of the opinion dealing with the question of expenses must be considered obiter. On the other hand, there are also a number of foreign decisions holding, as we hold here, that such instructions are prejudicial to the defendant. As was stated in Peterson *v.* U. S., 213 Fed. 920, at page 925, "It was not correct to say that the government had a right to a verdict without further expenditure of time and money; it had only a right to a fair consideration of the case. No obligation rested upon it to make any further expenditure, for, in case of a mistrial, it would have been the right . . of the prosecuting officers to dismiss the prosecution. In any event, it was not its right to demand an agreement; nor did the defendant have such right." See also State *v.* Chambers, 9 Idaho 673 (75 Pac. 274); State *v.* Clark, 38 Nev. 304 (149 Pac. 185); Secor *v.* State, 118 Wis. 621 (95 N.W. 942); Lagrone *v.* State, 84 Tex. Crim. R. 609 (209 S.W. 411).

■ Special ground 4, contending that the trial court erred in failing to grant a mistrial because of certain improper argument of the solicitor-general, is without merit, since the solicitor-general immediately upon making the argument complained of apologized to the court, the jury, and counsel for the defendant. Thereupon the court promptly gave proper and corrective instructions to the jury. Special grounds 5, 6 and 7, contending that the trial court erred in failing to give in charge certain timely written requests, are without merit since the trial court fully, fairly and completely charged the substance of these requests in his general charge. *Southern Cotton Oil Co.* v. *Skip-*

*per*, 125 *Ga.* 368 (3) (54 S. E. 110). Special ground 8 has been expressly abandoned by counsel for the defense. Since the case is being reversed, the general grounds are not passed upon at this time, as it is likely that the retrial may be based on somewhat different evidence.

The trial court erred in overruling the motion for a new trial as amended for the reasons set out in division 1 hereof.

*Judgment reversed. MacIntyre, P.J., and Gardner, J., concur.*