38207. TAYLOR v. MURRAY.

DECIDED MAY 27, 1960—ADHERED TO JULY 13, 1960.

*Robert H. Jordan,* for plaintiff in error.

*Hatcher, Smith, Stubbs & Rothschild, Albert W. Stubbs, J. Madden Hatcher,* contra.

CARLISLE, Judge. E. N. Murray brought suit in the Superior Court of Marion County against Ida B. Taylor and Louis M. Phillips, seeking an injunction to restrain the cutting of timber and also seeking damages for the wrongful cutting of timber. All injunctive features having been eliminated, the case proceeded to trial as a suit for damages and the jury returned a verdict of $144 for the plaintiff. The defendant Taylor made a motion for a new trial on the general grounds and on five special grounds. The trial judge overruled that motion and the exception here is to that judgment.

█ It is well settled in this jurisdiction that a ground of a motion for a new trial complaining of the admission of evidence over objection must show what objection was made thereto, and that the objection was made at the time the evidence was offered. A mere general objection is insufficient to present any question for decision by the trial court in considering the motion or by the appellate court on review of that action. Accordingly, the first and second special grounds of the motion for a new trial which show that the only objection to the evidence complained of was in the following language: "Your Honor, I object to that about where Mr. Miller told him it was," fail to show that any specific objection to the evidence was made and are entirely too vague and general to present any question for decision, and the trial court did not err in overruling them. *Register v. State,* 10 Ga. App. 623 (1) (74 S. E. 429); *Culpepper v. Hall,* 22 Ga. App. 715 (1) (97 S. E. 111); *Atlanta Life Ins. Co. v. Jackson,* 34 Ga. App. 555 (2) (130 S. E. 378); *Kuusisto v. Wilkins,* 56 Ga. App. 405 (1) (192 S. E. 639); *Kimball v. State,* 63 Ga. App. 183, 185 (1) (10 S. E. 2d 240).

Special ground 3 of the motion contends that one of the jurors was disqualified because he was called as a witness for the plaintiff and his testimony clearly indicated that his mind was not impartial between the parties and that he had formed an opinion

as to the issues to be tried by the jury prior to hearing the evidence in the case; that he was a former employee of the party opposed to the movant; that a part of his testimony was illegally admitted by the court, and that knowledge of the opinions expressed by the juror were unknown to the movant at the time the jury was being empanelled. This ground fails to set forth therein or to point out where the evidence may be found in the brief of the evidence which movant contends indicated that the juror's mind was not impartial or that he had formed an opinion as to the issues, and fails to point out or set forth therein what evidence was illegally admitted, and what objection was made thereto, if any. In this condition, this ground presents no question for adjudication by this court.

While it is no longer necessary that special grounds of a motion for a new trial have set out therein portions of the record or the portions of the charge necessary for a consideration of the questions raised thereby, and while it is no longer necessary that such grounds be complete and understandable within themselves, they, nevertheless, must point out with reasonable certainty the essential portions of the record necessary for an understanding of the questions presented for decision. *Code* § 6-901, as amended by the act approved March 7, 1957 (Ga. L. 1957, pp. 224, 232). Accordingly, a ground of the motion for a new trial which complains that the trial court erred in charging the jury "on the question of punitive damages as set forth in the charge," but which fails to set forth more specifically just what portion of the judge's charge is complained of is too incomplete to be considered by this court. *Smith v. Owen*, 112 Ga. 531 (1) (37 S. E. 729); *Dowdell v. State*, 200 Ga. 775, 782 (3) (38 S. E. 2d 780). Special ground 5 of the motion for a new trial was without merit, and the trial judge did not err in overruling it.

■ While special ground 4 purports to assign error on the entire charge, for the sake of this decision it will be treated as assigning error on only the following portion thereof:

"Well, now, gentlemen, of course, it's your prerogative to not decide on it if you can't decide on it. Nevertheless, of course, you realize that the case needs to be terminated—and it's a

matter that will be of continuing importance to the parties and some expense to the county unless it can be completed.

"This jury is a good jury. It is a representative jury of this county and if you can—why, you should make a verdict.

"I would like to give you a little while longer. I don't want to punish you; but it is very desirable and, of course, I know you can see that and understand that—from the viewpoint of the litigants and from the viewpoint of the county and the expense to the county to have this problem to continue in the courts unresolved; and I would like for you to try earnestly a little while longer—see if you can reconcile your differences and, if possible, make a verdict.

"And, of course, if you can't make a verdict—why it will terminate in a mistrial and that means that it would have to be tried over again.

"Suppose you retire and go over it again and see if you can make a verdict; and if you can't—in a reasonable time—why, let that be known to me."

It is contended that this language brought undue pressure upon the jury to arrive at a verdict merely for the sake of saving the county the expense of trying the case again, and caused the jury, or some of the jurors, to agree upon a verdict contrary to their feeling as to the true boundary lines between the plaintiff and the defendant. Of course, whether the continuation of the case unresolved and the retrial of the case resulting from a mistrial would involve additional expense to the county is a matter which is completely irrelevant to any issue being tried by the jury. Trial judges, therefore, should avoid references to such matters. See *Campbell v. State,* 81 Ga. App. 834 (1) (60 S. E. 2d 169). However, in the instant case it is clear that there was no coercion of the jury by the court aside from the use of this language, since the court plainly told the jury that it was their prerogative not to decide the case and that if they couldn't make a verdict in a reasonable time, they should inform the court. When read in its context, the reference to expense to the county was probably not harmful in this case, and since the case is to be tried again, it is an error which will not likely recur in view of what has been said. See *White*

*v. Fulton,* 68 Ga. 511 (3); *Austin v. Appling,* 88 Ga. 54, 56 (1) (13 S. E. 955); *Roper v. Holbrook,* 77 Ga. App. 686, 688 (3) (49 S. E. 2d 558).

■ The evidence was wholly insufficient to sustain the finding of the jury that the boundary line between the plaintiff's land and the defendant's land be established "in the center of Crooked Creek which runs between Murray property and the Taylor property." The evidence offered in support of the plaintiff's contention consisted of oral testimony and documentary evidence. The plaintiff introduced copies of deeds in his chain of title in which the description applicable to the particular portion of his land here in question was in each substantially as follows: "Also 57.0 acres in lot No. 16 being the southeast quarter of said lot and 7 acres adjoining same, being practically in shape of a square." There was nothing in the description contained in the various deeds introduced in evidence that in any wise indicated where the western boundary of said 57-acre tract was. The plaintiff also introduced in evidence a plat prepared by Aldridge, Moon and King, Civil Engineers, dated October 22, 1958, which purported to show thereon the relative location of the north, south and east land lot lines of lot No. 16, the relative location with respect to those lines of a "new wire fence" and of an "old wire fence," both of which were referred to in the oral testimony. This plat also showed the relative location of the center of "Peacock Ditch" and of an "old stream" and of a "new ditch" with the other mentioned features. No testimony with respect to these ditches or as to the stream appears in the record (unless the testimony with respect to "Crooked Creek" be construed as referring to the Peacock Ditch and old stream), but it appears from the plat that the center of "Peacock Ditch," together with the "old stream" forms a continuous line running northwardly from the south line of lot 16 through the southeast and northeast quadrants of land lot 16, almost exactly due north in the southeast quadrant and turning northeasterly in the northeast quadrant. It further appears from this plat that the old wire fence forms an irregular crooked line running the full distance from the south lot line to the east lot line in a direction generally parallel to the ditch and stream and to the

east thereof and between the ditch and stream and the new wire fence which lies further to the east thereof and which appears from the plat to parallel almost exactly the ditch and stream.

Mr. L. R. Aldridge, Jr., testified to having made the survey from which the plat was made. He testified to having observed the location of the new fence, and of the old fence, and that the old fence ran through the middle of the swamp, but there is nothing in his testimony which indicated that he found any evidence as to the location of the line between the parties and his testimony contains absolutely no reference to the ditch. Whether or not "Peacock Ditch" is the same as "Crooked Creek" is impossible to ascertain from an examination of the record. There is, therefore, no basis on which this plat could have in any wise been considered by the jurors in conjunction with the deeds in arriving at the true location of the boundary line.

The plaintiff testified that the new wire fence referred to was erected in 1953 or 1954, but that it was not intended as a line fence and that he spoke to the defendant Phillips about his cutting timber "west of the new wire fence." However, while the plaintiff testified that the defendant Phillips, or those working for him, had "thrown a bridge across the creek" and were cutting timber west of the new wire fence, there is nothing in his testimony that contains any reference to the location of the line, and whether it was his contention that the line was located at the creek or at the old wire fence or somewhere else is not discernible from his testimony. The same might be said for the testimony of E. N. Murray, Jr.

A Mr. Jernigan testified in behalf of the plaintiff that in years past he had cut trees in the swamp and had secured permission from the plaintiff's predecessor in title, but it clearly appears that he was referring to having cut such timber on the east side of the old wire fence. This was not evidence that the line was in the creek. This witness also testified to having fished "in the old duck pond" and that he secured permission from the plaintiff's and from the defendant's predecessors in title because he "was not sure which side of the pond was on whose property." He testified that he did not know whether the old wire fence

was the line or not. · Mr. John Miller, a juror, was called as a witness and he testified that he did not know where the line was, and that he was willing to listen to both sides of the question and try to find out. The defendant, Ida Bob Taylor, and her witnesses testified that the line between her property and that of the plaintiff was indicated by the presence of an "old hedgerow" which appears from the evidence on behalf of the defendant to have been located somewhere near the eastern edge of the swamp east of the creek.

No witness testified as to the general reputation in the neighborhood as to the location of the line, nor was there any evidence of acquiescence between parties or their predecessors in title, nor was there evidence of acts or declarations establishing the dividing line along Crooked Creek. No witness testified as to any landmarks or monuments which would indicate that the creek was the line, and there was no claim by the plaintiff of actual possession of the land down to the center line of the creek. There was no evidence establishing the line in any of the ways recognized by law.

Even if the description in the deed might be said to be sufficient to indicate a tract of 57 acres with equal and parallel sides bounded on the south and east by those respective land lot lines of land lot 16 (*Payton v. McPhaul*, 128 Ga. 510 (1), 58 S. E. 50, 11 Ann. Cas. 163), it is clear from the record that the finding of the jury was not in accordance with the rule established by cases such as that cited.

On the whole, it must be said that the evidence in the record as to the location of a line between the respective lands of the parties is so vague, uncertain and nonexistent as to render the finding by the jury in this case wholly and completely unauthorized by any evidence appearing in the record before this court, since there is no evidence that any particular amount of timber was cut off the lands of the plaintiff. The brief of the evidence has the approval of the trial judge and, presumably, completely and accurately sets forth the evidence adduced on the trial. It does not appear from the record that there was any objection to the approval of the brief and we are, under the state of the record and the brief of the evidence before this court,

bound to hold that the evidence was insufficient to sustain the finding of the jury as to the location of the line.  See *Bradley v. Chattanooga Iron &c. Co.*, 144 Ga. 478 (4) (87 S. E. 465). Whether a finding as to any other location of the line would have been authorized is not before this court for decision.

*Judgment reversed.  Gardner, P. J., and Townsend, J., concur.*