Parker *v.* The Georgia Pacific Railway Co.

1. Only in an extreme case, if at all, will a reviewing court order a new trial because leading questions were propounded to a witness.
2. The evidence being sufficient that the rule-book offered contained the rules of the company of force when the employé was injured, the book was admissible without first proving that the employé had knowledge of the rules it contained. His knowledge was matter for either prior or subsequent verification.
3. 4. Whether an employé giving a signal to a co-employé had a right to have it observed, or whether it was possible to transact business without acting upon the assumption that it would be observed, is for decision by the jury, not by a witness.
5. Where the instructions sought are plainly implied in those given to the jury, failure to charge in express terms as requested is not error.
6. Failure of a railroad employé to extricate himself from a perilous situation brought on by the negligence of a co-employé, when he could do so by the use of ordinary care, will bar his right to recover.
7. To refer to the jury the question of the plaintiff's duty under certain circumstances detailed in the evidence, is only to refer to them the question of his diligence or negligence, and is not error.
8. When the judge, at the request of the jury, on their return into court pending their deliberations, has recharged them touching the law applicable to the plaintiff's negligence, he need not add anything respecting the defendant's negligence, no request as to that being made by the jury.
(*a*) The court has a right to volunteer an additional charge or to recharge on the general rule as to finding according to a preponderance of the evidence.
(*b*) After giving this rule, for the court to add that by observing it the

jury would, in his opinion, have no difficulty in arriving at a verdict, was not to intimate what the evidence was, or its effect, or which party ought to prevail.

(c) To instruct the jury that ordinary care must be used when it will avail, is plainly to imply that it need not be used when it will not avail.

9. The court did not unduly press the jury to arrive at a verdict, though perhaps the language addressed to them went to the limit of propriety.

October 28, 1889.

New trial. Evidence. Practice. Witness. Railroads. Negligence. Master and servant. Charge of court. Verdict. Before Judge Van Epps. City court of Atlanta. June term, 1889.

Gordon Parker sued the railroad company for damages. On February 19, 1884, his right arm was mashed by the dead-blocks of moving cars while he was coupling. He gave proper signals and was using all possible care. It was his duty to make a coupling then and there. He knew what a brakeman ought to do, and all about the rules of the road, as a brakeman. He supposed the book shown to him by counsel, marked "rulebook," was the rule-book of the company; that is what it says. He knew nothing of brakemen's and couplers' duties except from seeing and being around. Had never seen a rule-book before he was hurt. Had never been informed of any rule on the subject of sticks. Sticks were not in use at the time he was hurt. Had never seen any rule against going between the cars and coupling; never knew of any such rule. When he was hurt he had just set the coupling-pin, and as he turned around the cars propelled by an engine were on him and caught him. The cars which he was to couple were one and a half car-lengths apart when he first gave the signal to stop; the engine was coming up grade, and had the engineer obeyed his signal he could have stopped before he got to plaintiff. After fixing the pin, he could not have gotten out before the cars hit.

He was between the cars when they struck the first time and from then until after he was hurt. He made no attempt to couple from the outside; and it was impossible to do so. After he went in to make the coupling, the cars struck and rebounded. He stayed between them to try to make the coupling again, and the engineer, not obeying the signal to stop the train which he had given before he went between the cars, continued to push the cars attached to the engine up grade until they again struck the car to which the coupling was to be made, and hurt plaintiff. It did not take them long to come together again. The fireman saw plaintiff's signal and repeated it to the engineer in time for him to have stopped. Sticks were not in use for coupling on defendant's road at the time the plaintiff was hurt. There was no way a man could couple cars without going between them, though sometimes he could couple with a stick if the bumpers happened to hit nicely. The yardmaster in charge of the train which hurt plaintiff, and under whom plaintiff was working, had never said anything to him with reference to the use of sticks and never notified him of any rule that brakemen were prohibited from going between the cars to couple them.

For the defendant Perkerson testified: Has been a conductor for defendant since the fall of 1883, and during that time has been acquainted with the rules and mode of managing and running trains on the road. The rule and custom was that persons were not allowed to go between the cars to make couplings. The book offered by counsel is the rule-book that was in effect when witness went on the road. Another has come out since. Sticks were used for making couplings on trains; this enabled couplers to keep from between the cars. Had never seen the rule-book offered; knows it is a rule-book from its appearance and the way it is

bound. Does not know where it came from, and does not know that every rule in it was in the original book. All he knows about the rules and customs among yard men is, that he saw the rules published in the rule-book and on the bulletin orders. Did not know what the custom among yard men was. Had known men on the line to couple without sticks. The master-mechanic furnished the sticks. Did not know whether yard men were furnished with sticks or notified that they could get them. Did not furnish the brakemen the rule books, but supposed if they applied for the books, they were furnished. Did not know of a brakeman having ever applied for or obtained one. A pin could not be set with a stick, but could be set by hand before the cars came together, and after they came together a stick could be used. When witness gives the engineer a signal to stop, he expects him to obey it and has the right so to expect; and a brakeman in the discharge of his duties has the same right. When a stick was used, the brakeman set his pin and then came out and inserted the link with his stick and then knocked the pin down. The rules requiring that "all employés are required to make themselves familiar with the rules and regulations; and ignorance of the rules will not be received as an excuse for their violation"; and that brakemen "are positively prohibited from going between cars for the purpose of coupling them," were in force at the time of the injury.

A witness thought employés had been suspended for not using the sticks; and there was other testimony to the effect that the rule as to sticks, etc. was of force and sticks were of use on the road before and at the time plaintiff was hurt; and that all employés were required to read the bulletin. Witness Turner was asked by plaintiff's counsel: "When a brakeman in the discharge of his duty gives a signal for the engineer to

stop, and he the right to rely upon the engineer's stopping?" The court sustained an objection to this question; counsel said to the witness : "I will ask you if it is possible to transact business on a railroad unless the brakeman, giving a signal, acts upon the idea that the engineer will obey it?" An objection to this also was sustained. The witness did testify that it was the duty of an engineer, when he receives from a brakeman a signal to stop, to obey it; "that is what they are supposed to do."

The jury found for the defendant, and plaintiff moved for a new trial on the following grounds :

(1) Because the defendant's counsel was permitted to ask witness Perkerson to "look at the book carefully and see whether you have any cause to doubt whether that is the rule-book"; over objection that this was leading and matter of opinion. Also: "Is he in any danger of being mashed by the cars?" to which the witness answered, "No." Plaintiff objected to this question because it was leading and had been preceded by the following question and answer: "A car-coupler who keeps from between the cars in making a coupling stays on the outside?" Answer: "Yes sir."

(2) Error in admitting a book claimed to be the rule-book of defendant, over objection that it had not been proved to contain the rules of force at the time of the accident, and there was no evidence that plaintiff had or ought to have knowledge of it and the rules it contained, or was in any way bound by it.

(3) Error in sustaining objections to the questions asked of defendant's witness Turner, as indicated in the report of Turner's testimony above.

(4) Error in stating, as to whether it was possible to transact business on a railroad unless a brakeman giving a signal acted upon the idea that the engineer would obey it, that the court did not think that was material

under the law; and in sustaining objection to a question to that effect asked of witness Turner.

(5) Error in refusing to charge that an employé being in the discharge of his duty has the right to rely upon other employés doing their duty.

(6) The court charged that if the engineer failed to take or to regard a signal given to stop, and came back rapidly and even negligently, and the plaintiff could have by ordinary care extricated himself, he cannot recover, even if the engineer was negligent.—Error, because calculated to mislead the jury and make them believe that it was the duty of plaintiff to have gotten from between the cars after they first struck, and because it was an opinion on a matter of fact by the court.

(7) The court charged: See whether, after the cars struck the first time in the manner alleged, and a coupling could not be made, it was still the duty of plaintiff to stay in there and try again, and to remain there between the cars until the car which he alleges was rebounding struck again, the engine meantime continuing to come back, or whether the circumstances were such as to apprise him of the engineer's negligence and of his own danger, and make it his duty to get out, and whether in that case he could, by ordinary care, have gotten out and avoided being hurt.—Error, because it compelled the jury to find for defendant unless they believed it was plaintiff's duty to stay between the cars, and because it failed to show the jury that plaintiff might be entitled to recover if it was his right to stay between the cars, even if it was not his duty to do so.

(8–9) About 10 o'clock, February 7, the jury retired; at 9 o'clock, February 8, they announced that they were unable to agree upon a verdict. They were called into court, when a juror stated that the trouble was about the law; that the jurors did not seem to under-

stand the law about the negligence of the plaintiff.
They were asked by the court whether the failure to
agree grew out of a failure to grasp the law of the case,
or out of a difference as to what the facts proved.  A
juror stated that the jury did not seem to understand
the nature of the evidence; that he thought there was
no trouble in the jury-box as to the law the court gave
in charge; and that there was a suggestion that they
would like to hear the charge on that particular point
as to the negligence of the plaintiff.  The court then
charged: If the plaintiff was guilty of any negligence
whatever in the act which resulted in his injury, he
could not recover.  In order for an employé of a rail-
road company to recover for a personal injury happening
to him in the service of the road, the employé must be
guilty of no contributory fault.  In other words, he
must be blameless in the transaction which resulted in
his injury.  In addition to that rule on that subject, I
also charge you that if an employé could, by the exer-
cise of ordinary care and diligence on his part, have
avoided the injury, he could not recover even if the rail-
road company was negligent itself; that is, if the rail-
road company was negligent in the way that the en-
gineer moved the train, and the plaintiff, after a peril
brought upon him by that negligence had commenced
to operate and was impending over him,—if the plain-
tiff could by ordinary care on his part have avoided in-
jury—that is, have extricated himself from his perilous
situation, he could not recover.  Now, in so far as your
disagreement relates to any question of fact, I will
state as follows: If you disagree about a matter of law
I could aid you, but in so far as it is a matter of evidence
I cannot aid you, as you are the judges of the evidence,
except by some rules of law for your guidance.  I can,
however, give you this rule: In a civil case, when the
jury cannot reconcile the testimony of witnesses con-

v 83-35

flicting, they can find a verdict according to the preponderance of testimony. If you will follow this rule, I think you will have no difficulty in arriving at a verdict. If juries would follow this rule, there would never be any necessity for a mistrial in a civil case.—Then the court charged as quoted in the last paragraph of the opinion.

Plaintiff's counsel stated that he would like to call the attention of the court to further instructions proper to be given; and pending this the jury retired. Plaintiff's counsel then insisted that the charge as given was subject to specified objections, and urged that the instructions stated below and a full charge applicable to the defendant's negligence, should be given to the jury. The court declined to charge further; and the jury, after being absent not over five minutes, returned a verdict for the defendant. The charges requested were, that the plaintiff should not be considered at fault for not extricating himself from between the cars if the jury believed, in view of all the facts, that due care on his part did not require him to do so; that in determining whether it was his duty so to do, all the surrounding circumstances may be considered, and the fact that an employé has the right to rely upon other employés doing their duty; and that the court also should present all the law, both *pro* and *con*, applicable to the plaintiff's alleged negligence.

The motion was overruled, and plaintiff excepted.

HOKE & BURTON SMITH, for plaintiff.

JACKSON & JACKSON, for defendant.

BLECKLEY, Chief Justice.

1. Concede that the questions to Perkerson were leading, their allowance would not be cause for a new trial. It would be a very extreme case indeed in which the mere form of the questions to a witness would justify a reviewing court in setting aside the verdict and judgment.

2. There was sufficient evidence that the rule-book admitted in evidence contained the rules of force when the plaintiff was injured, and whether he had knowledge of them or not was a question not going to the admissibility of the rules but to their binding effect upon his conduct.. That the rules existed, and what they were, constituted one step in the defendant's evidence, and that could be taken without first showing that the plaintiff had knowledge of them.

3. The question to Turner, " When the brakeman in the discharge of his duty gives a signal for the engineer to stop, and he the right to rely upon the engineer stopping ?" is not quite intelligible as it stands in the transcript of the record. Doubtless it means, has or had he the right ? etc. Thus construed, the right would be for decision by the jury, not by the witness. That the question was objected to and ruled inadmissible without any ground of objection being stated, is of no consequence. Where the court sees for itself that the question is not legal, no ground need be mentioned for information of the court, and if counsel propounding the question want the information, they should call for it.

4. Whether it be possible to transact business unless a brakeman giving a signal acts upon the idea that the engineer will obey it, is not for the witness, but for the jury to decide. It was not error, therefore, not to allow the witness Turner to decide it in this case. That the court thought the question immaterial and so said in ruling upon it, would not vitiate the trial, or defeat the verdict.

5. Failure of the court to instruct the jury in express terms (the charge as given plainly implying such matter) that an employé being in the discharge of his duty, has the right to rely upon other employés doing their duty, is not error. In this case the jury must have un-

derstood, from the charge given, that any omission of ordinary and reasonable care by the co-employés of plaintiff would be a violation of his right to the safety and security which the observance of such diligence would afford.

6. The failure of a railroad employé to extricate himself from a perilous situation when he could do so by the exercise of ordinary care, will bar him from recovery for a personal injury resulting from such failure, though the peril was brought upon him by the negligence of a co-employé. It is his duty to avoid the consequences of negligence when he can do so by the use of ordinary care. Code, §2972. And to recover, he must be without fault. *Id.* §3036.

7. To refer to the jury whether in certain circumstances detailed by the evidence the plaintiff ought to have done so and so, is not error. The charge complained of in the 7th ground of the motion for a new trial simply left to the jury the question whether certain conduct on his part would or would not be negligence.

8. When the jury return into court and request to be recharged on a certain part of the case, to wit, the plaintiff's negligence, the counsel for both parties being present, it is the right of the court to comply with their request. And it is also the right of the court to stop there and not recharge upon the defendant's negligence, though counsel for the plaintiff call for a recharge or a further charge to be given on the latter subject. The jury having confined their request to the negligence of one party, it is presumable they were in no perplexity as to that of the other. It was also the right of the court to volunteer an additional charge on the general rule of law touching the preponderance of evidence as a rule of decision in civil cases, and to add that by the observance of this rule the jury, in the opinion of the court, would have no difficulty in arriving at a verdict.

Whilst this may have implied that the court thought the evidence preponderated on the one side or the other, it conveyed no intimation as to what the evidence was, or its effect, or which party ought to succeed. In recharging on the plaintiff's negligence, the court stated the law accurately, as we think; and though the jury were not reminded that if the plaintiff could not have protected himself by the use of ordinary care, his failure in such case would not defeat him, yet that was plainly implied in the charge itself. There would be no sense in referring to the protecting power of ordinary care as a cause for defeating the action if the absence of such protecting power would equally with its presence render the use of ordinary care necessary. In other words, to say that ordinary care must be used when it will avail, is plainly to imply that it need not be used when it will not avail.

9. The court, after recharging the jury, said to them: "This jury is, in the eye of the law, as capable of deciding this case and reaching a verdict as any that may be empanelled hereafter, and I am disposed to give you some further opportunity to consider your verdict. Go to your room and make an honest effort to agree on a verdict, and follow the rule I have given you, and I do not think it will trouble you in agreeing." This, we think, was not unduly pressing the jury to a verdict, though it went, perhaps, to the allowable limit. *White v. Fulton*, 68 *Ga.* 511; *Central Railroad v. Neighbors*, *ante*, 444. There was no error in refusing a new trial.

*Judgment affirmed.*