## GOLATT *v.* THE STATE.

1. On the trial of one charged with murder, a threat uttered by the accused against the deceased shortly before the homicide was admissible in evidence, as tending to show malice, although it was stated in a conditional form.
2. No question of manslaughter was involved in the case. The evidence showed a case of wilful murder. The statement of the accused was to the effect that the woman's death was caused by an accident not involving criminal responsibility on his part. The accused was convicted of murder. It was therefore not error harmful to him, or requiring a new trial, that the court said to the jury, "If there is any manslaughter in the case, it is voluntary manslaughter."
3. The presiding judge should not unduly urge a jury to find a verdict, and employ such expressions as to injuriously affect the defense of the accused. This is especially true in a capital case, where the doctrine of reasonable doubt and the right of a jury to recommend to mercy are involved. But under the facts of this case, if error at all, it was not such as to require a reversal that the court, after the jury had been deliberating for some time, inquired of them if they had reached a verdict, and, upon being answered in the negative, stated to them that it was their duty to agree in the case; that it had been fairly and fully submitted to their consideration; that no juror should "stick out" in a spirit of stubbornness; that it was no credit to a juror to do that; but that if any juror had honest, abiding convictions which he found it impossible to reconcile, after due consultation with the other jurors, "let him stand by them;" and that it was the duty of the jurors to confer together and make an honest effort to agree. Nor will it require a reversal that, after the jurors had again deliberated for some time, he again gave them similar instructions, including the expression, "But, under the law which I have already given you in charge, you

should have no trouble in agreeing," the judge having also charged them as to their right to recommend the prisoner to be punished by imprisonment for life. (Holden and Atkinson, JJ., dissent on this point.)

Argued December 16, 1907.—Decided January 31, 1908.

Indictment for murder. Before Judge Hammond. Columbia superior court. October 15, 1907.

G. L. Callaway, for plaintiff in error.

John C. Hart, attorney-general, and J. S. Reynolds, solicitor-general, by John M. Graham, contra.

LUMPKIN, J. Robert Golatt was indicted for the murder of Edie Moore, by knocking her in the head with an axe. He was convicted, moved for a new trial, and upon its refusal brought the case to this court by bill of exceptions. The grounds of the motion for a new trial are sufficiently disposed of in the headnotes, without discussion, except those which complain that the judge unduly urged the jury to agree upon a verdict, and used expressions in doing so which were calculated to injure the defendant. Expressions quite similar to some of those used by the presiding judge were held not to require a reversal, in Allen v. Woodson, 50 Ga. 53, 63, Parker v. Georgia Pac. R. Co., 83 Ga. 539 (10 S. E. 233), and Chandler v. State, 124 Ga. 821 (3), (53 S. E. 91). In 11 Enc. Pl. & Pr. 304, it is said that "The trial judge is vested with large discretion in the conduct of judicial proceedings, and he may properly admonish the jury as to the desirability and importance of agreeing on a verdict, and may urge them to make every effort to do so consistent with their consciences." In the text and the notes appended thereto are collected a number of charges on this subject, which have been held by various courts not to be erroneous or to require a new trial. It was argued by counsel for plaintiff in error that if the expressions employed by the presiding judge, when taken singly, did not require a new trial, nevertheless, when they were gathered together, their cumulative force was injurious to the defendant. We incline to think that our brother of the circuit bench may have carried his charges on this subject very near or quite to the limit of what is permissible. If the case were one of conflicting evidence, of closely contested issues of fact, or of circumstantial evidence, or if there were any errors in the charges or rulings of the court on other subjects, to which exception was

taken, we should be less reluctant to reverse the judgment below on account of them, when taken in connection with these repeated and somewhat emphatic admonitions. But the case before us is one of shocking murder, with no conflict in evidence, and no apparent ground for palliation. The defendant's own statement was palpably untrue on its face, and was utterly incredible.

The evidence for the State showed, without conflict, that the accused and the deceased were living in unlawful cohabitation; that they had frequent quarrels, and he used violence upon her; that she reported one of the assaults to her employer, some of whose land the accused was planting either as a tenant or as a cropper; that the employer spoke to him about it, but he begged not to be prosecuted, and his request was granted; that just before the homicide he was cursing; that he took a gun and went to her and ordered her to put down a baby which she had in her arms and of which he was the father; that, upon her refusing to do so, he put down the gun, took up an axe, pulled the baby from her arms, and laid it on the bed; that she took hold of the axe which he had in his hand, and a struggle ensued for its possession; that she finally turned loose the axe and began to run in the direction of her employer's house; that he followed her, overtook her, and with an oath and a statement that he did not care if his neck should be broken for it, struck her on the head twice, sticking the axe into her skull and crushing it on one side, causing her death. There was also evidence that after she reported his previous conduct to her employer, he seemed to be mad about it and threatened that if she went to tell anything more on him after they had another fuss, he would bet that she would not go to her employer any more, saying, with an oath, that he would kill her. The employer testified, that, on the day before the homicide, the accused beat the deceased with a stick; that the witness heard her screaming, and went to the house where the two lived, severely reprimanded the accused, and warned him that such conduct must cease. The accused introduced no evidence, but relied on his statement to the effect that the deceased had agreed to help him work his cotton; that they had a quarrel on the subject; that she threatened to kill him, and picked up an axe; that he said she would not kill him; that "she grabbed the axe and run, and I run in her room and grabbed it from her and took it from her, and she had the

axe, and I had hold of it, and tussling over the axe, both of us fell out of the door, and I tried to take it from her, and, pulling it out of her hand, that is the cause of the lick hitting her back there" [indicating the back of the head], . . and I didn't intend to hit her with it no how." He gave no explanation of how an accidental falling out of a door drove the axe into her skull or crushed it; or how her arm happened to be broken, or she was beaten in the breast; or how she came to die, not in front of the door, but near the corner of the house,—all of which facts were shown by the evidence.

Under the facts of this case, we think there should be no reversal.

*Judgment affirmed. All the Justices concur, except Atkinson and Holden, JJ., who dissent.*

HOLDEN, J. I can not agree with the majority opinion of the court that the judge upon the trial of this case did not commit reversible error in the two recharges to the jury complained of, delivered after they had first retired to consider the case. It appears that about 50 minutes after the jury first retired to consider the case, the court sent for them and delivered one of these recharges, and, after they had again retired and had the case under consideration for one and a half hours, the court had them brought before him and delivered a second recharge. In my opinion, the language employed by the court in these two recharges, especially the following language, "It is your duty to reach a verdict," and "Now go into your room and agree on one," and again, "But, under the law which I have already given you in charge, you should have no trouble in agreeing," was of such a character as to mislead the jury as to their duty and press them too hard towards the finding of a verdict. In the absence of such recharges, the jury might have made a mistrial, or else have recommended the defendant to the mercy of the court. The ruling made in *Parker* v. *Railway Co.*, 83 *Ga.* 539 (10 S. E. 233), cited in the majority opinion, referred to a charge materially different from the charges to which exceptions are made in the case before us, and is not controlling.

I am authorized by Mr. Justice Atkinson to state that he concurs in the views herein expressed.