YANCY *v.* THE STATE.

No. 8544. OCTOBER 17, 1931.

*Edwin A. Rogers, J. A. Comer,* and *R. L. Tipton,* for plaintiff in error.

*R. S. Foy, solicitor-general,* and *J. H. Pate,* contra.

HINES, J. Brewell Yancy was indicted for the offense of rape committed on Zona Latrelle Shivers, who was a little over six and one half years of age at the time of the alleged crime. The defendant was convicted, without a recommendation; and he was sentenced to death by electrocution. He moved for a new trial upon the general grounds, and by amendment added certain special grounds. The judge overruled his motion, and he excepted.

■ In the second ground of the amendment to his motion for new trial the defendant complains that the judge erred in giving to the jury the following instruction: "And touching the question of rape and the penetration necessary in order to constitute the offense of rape, I present for your consideration the rules laid down by one of our courts of review: 'There is carnal knowledge,' (and of course you will understand that is one of the essential elements of rape) 'if there is the slightest penetration of the sexual organ of the female by the sexual organ of the male. It is not necessary that the vagina be entered or that the hymen be ruptured; the entering of the vulva or labia is sufficient.'" Movant complains of this charge, for the reason that to present for the consideration of the jury rules of laws laid down by one of our courts of review, without charging the same as the law applicable to the issue involved, was confusing to the jury and was hurtful and harmful to him. We do not think that the objection to this instruction is meritorious.

■ The judge in his charge to the jury instructed them as to the possible verdicts which might be rendered by them under the indictment, including a verdict of rape, without a recommendation to mercy, a verdict of assault with intent to commit rape, and a verdict of assault and battery, under the law and the evidence; and outlined the punishment and form of verdict applicable to each of such findings; but wholly failed to give in charge to the jury any

law applicable to the finding of a verdict of not guilty, and the form of their verdict in the event of such finding. Movant insists that he was entitled, as a matter of law, to have such instruction given in charge, and that a failure to so instruct the jury was harmful and prejudicial to him, and tended to confuse the jury, as it left them with instructions only as to the law and form of verdict applicable in the event of verdicts of guilty. For this reason movant insists that this omission of the judge in this matter was error requiring the grant of a new trial. In *Pritchett* v. *State,* 92 *Ga.* 65 (9) (18 S. E. 536), this court held that "When the court inadvertently omits to instruct the jury as to the form of the verdict in case they find the accused not guilty, the omission may be repaired by recalling the jury after they have retired to their room and then suggesting the proper form." This does not amount to a holding that the omission to instruct the jury as to the form of their verdict when they find the defendant not guilty requires, in all cases, the grant of a new trial. In *Rockmore* v. *State,* 93 *Ga.* 123 (19 S. E. 32), this court stated that it was error for the trial judge to fail in his charge to instruct the jury as to the form of their verdict in the event they should acquit the accused; but having inadvertently failed to do so, the error was cured by recalling them after they had retired to their room, and giving them the proper instruction in this respect. It will be noted that the question in this case was whether in case of such omission the error, if any, was cured by proper instruction in regard to the form of their verdict. The question whether such omission would necessarily require the grant of a new trial was not involved in either of the cases cited.

In this case the court instructed the jury that "In all criminal trials the prisoner enters upon the trial of his case with the presumption of innocence standing in his favor as a matter of law, and this goes with him from the beginning and throughout the length of the trial of his case, and demands that he be acquitted unless the jury is satisfied beyond a reasonable doubt of his guilt." The court further instructed the jury that "In all criminal trials the burden rests upon the State to satisfy the mind and conscience of the jury, beyond a reasonable doubt, of the guilt of the prisoner, before a conviction would be authorized of any offense." In view of these instructions, we do not think that the omission of the

judge to instruct the jury as to the form of their verdict in case of acquittal requires the grant of a new trial. So a new trial will not be ordered because of this omission of the trial judge, when it appears that in giving his charge to the jury he instructed them that the prisoner entered upon the trial of his case with the presumption of innocence standing in his favor as a matter of law, and that this went with him from the beginning to the end of the trial of his case, and demanded that he be acquitted. unless the jury was satisfied beyond a reasonable doubt of his guilt. This was tantamount to instructing them that they should return a verdict of acquittal unless they were satisfied beyond a reasonable doubt of his guilt; and in view of such instruction, the omission to give to the jury the form of their verdict in case of acquittal does not require the grant of a new trial. *Thompson* v. *State,* 120 *Ga.* 132 (5) (47 S. E. 566).

■   The fourth ground is not approved by the trial judge, and for this reason it presents no question for decision by this court.

■   The defendant insists, in the fifth ground, that the judge erred in giving in charge to the jury this instruction: "If you find an assault was committed and rape was intended but not consummated; that for some reason the essential ingredient of penetration or entrance was not effected, even though the assault was made for the purpose of committing rape; and if you are satisfied beyond a reasonable doubt that such was the truth of the case, then you may consider the law relative to the crime of assault with intent to rape, for the purpose of determining whether or not the defendant is guilty of that crime and offense." The assignment of error is not very clear. It seems to be that this instruction limited the jury to the proposition that they must be satisfied beyond a reasonable doubt that for some reason penetration or entrance was not effected, when they should have been instructed that if they had a reasonable doubt whether penetration or entrance was effected it would be their duty to find the defendant not guilty of rape, and that then they might consider the question of the guilt of the accused of an assault with intent to commit rape; that this instruction deprived the defendant of the principle of law that his guilt must be shown by proper evidence on all material issues, beyond a reasonable doubt; and that the same was confusing and was calculated to confuse the jury. We do not think

that this criticism is well founded. The judge, in effect, instructed the jury that if they found that an assault had been committed and rape was intended but not consummated for lack of the essential ingredient of penetration or entrance, even though the assault was made for the purpose of committing rape; that if they were satisfied beyond a reasonable doubt that such was the truth of the case, that is, that the defendant had assaulted the female with the intent to rape her, but the rape was not effected for lack of the ingredient of penetration or entrance; and that if the jury were satisfied beyond a reasonable doubt that such was the truth of the case, then they might consider the law relative to the crime of an assault with intent to commit rape, for the purpose of determining whether the defendant was guilty of that crime. This instruction in no way deprived the defendant of the principle of law that his guilt must be shown by proper evidence on all material issues, beyond a reasonable doubt. The instruction was not confusing, and was not calculated to confuse the jury; and was not error requiring the grant of a new trial. The judge by this instruction told the jury that they should first find beyond a reasonable doubt that the defendant had assaulted the female for the purpose of raping her and that this purpose had failed for lack of penetration of the female by the defendant, and that before they could consider the question of whether he was guilty of an assault with intent to rape the jury must be satisfied beyond a reasonable doubt that the defendant had so attacked the female and that he had failed to accomplish the rape for lack of penetration. In this view the instruction complained of was not erroneous.

■ In the sixth ground the defendant contends that the court erred, after the jury had been deliberating for several hours and had been recalled for further instructions, in making to them this statement: "I have recalled you, gentlemen, for the purpose of finding out whether I could render you any assistance. Mr. foreman, is there any point of law you are in doubt of, or is it merely a failure to agree as to the facts in the case?" The foreman replied: "I don't know whether they want any legal instructions or not." The court: "Gentlemen, is there any member that would like to be enlightened on any point of law? You gentlemen were selected as upright and intelligent men. You were presented to me by the jury commissioners as such, and you have heard the evidence

and you have heard the law. Now if there is any point of law that you desire expounded more fully, it will be my pleasure to explain it to you. It seems that you are qualified, and I am disposed to give you plenty of time to continue your deliberations. I call your attention to the fact that mistrials are a serious matter, and in many ways hinder justice." The defendant excepted to the expressions: "You gentlemen were selected as upright and intelligent men. You were presented to me by the jury commissioners as such. . . It seems that you are qualified. . . I call your attention to the fact that mistrials are a serious matter, and in many ways hinder justice." Error is assigned on the ground that this was calculated to cause the jury to feel that the court entertained doubt as to their qualifications to try the case, was calculated to prevent the individual and conscientious opinions of the jurors, was such as to intimidate the jurors in forming individual opinions as to the law and facts of the case, and was calculated to cause the jurors to surrender their individual opinions and agree with other jurors rather than to be a party to such serious matter as hindering justice by not agreeing to a verdict, and tended to destroy the individual opinions of jurors in the trial of the case, and was harmful to the defendant.

It is true that juries should be left free to act without any real or seeming coercion on the part of the court. *White* v. *Fulton,* 68 *Ga.* 511 (3). The presiding judge should not unduly urge the jury to find a verdict and employ such expressions as to injuriously affect the defense of the accused. This is especially true in a capital case, where the doctrine of reasonable doubt and the right of a jury to recommend to mercy are involved. *Golatt* v. *State,* 120 *Ga.* 18 (60 S. E. 107), a murder case, where the jury had been deliberating for some time when the judge inquired of them if they had reached a verdict, and, upon being answered in the negative, stated to them that it was their duty to agree in the case; that it had been fairly and fully submitted to their consideration; that no juror should "stick out" in a spirit of stubbornness; that it was no credit to a juror to do that; that if any juror had honest, abiding convictions, which he found it impossible to reconcile, after due consultation with the other jurors, for him to stand by them; and that it was the duty of the jurors to confer together and make an honest effort to agree. After the jurors had again de-

liberated for some time, the trial judge gave them similar instructions, including the expression: "But, under the law which I have already given you in charge, you should have no trouble in agreeing." It was held by the majority of this court that the above statements by the judge did not unduly urge the jury to find a verdict. In *Gambo* v. *Dugas,* 145 *Ga.* 614 (89 S. E. 679), the trial judge, in recharging the jury, gave them this instruction: "It is your duty to agree on a verdict in this case. The case has been fully and completely tried. You are just as competent as any jury would be of disposing of it. I say to you, gentlemen, it is no credit to a juror to stand out in a pure spirit of stubbornness, because he has taken a position. It is the duty of every juror to consult with every other juror and reach a mutual understanding in the case. The court does not mean to say that a juror is to give up an abiding conviction in the matter, but it is your duty to reconcile such differences, if any exist, and it is possible to do so. If you follow the principles of law given you by the court, you ought not to have any trouble in agreeing on a verdict." This court held that the above instruction pressed the urging of the jury to agree upon a verdict to the utmost line permissible, and to the very verge of error; and that it is much better for trial judges to be conservative in such matters, rather than to bring their instructions so close to the line of undue pressure, with the danger that in a close or doubtful case, or one where there is any other error, it might require a retrial of the case. In support of its ruling this court cited *Golatt* v. *State,* supra, with other cases. In *Jones* v. *State,* 117 *Ga.* 713 (44 S. E. 877), a murder case, it was held that it was not improper for the judge, for the purpose of informing himself as to the possibility of the jury being able to agree upon a verdict, to inquire of the individual jurors as to whether there was any likelihood of an agreement, and when he was informed by some of the jurors that there was no such likelihood, and by others that it was doubtful that an agreement could be reached, to say: "Well, you are sensible men. I do not wish to force you to make a verdict, but I will stay with you the day. Retire to your room, and see if you can agree upon a verdict."

The language in the statement with which we are dealing, "I call your attention to the fact that mistrials are a serious matter, and in many cases hinder justice," did not unduly urge or coerce

692

the jury to find a verdict in this case. In *Parker* v. *Georgia Pacific Ry. Co.*, 83 *Ga.* 539 (10 S. E. 233), it was held that the trial judge had a right to volunteer an additional charge or to recharge the jury on the general rule as to finding a verdict according to the preponderance of the evidence, that the judge did not err, after giving this rule, in adding that by observing it the jury would, in his opinion, have no difficulty in arriving at a verdict, and that such instruction did not intimate what the evidence was, or its effect, or which party ought to prevail. The language with which we are dealing in no way intimated what verdict ought to be rendered by the jury in this case. It would apply to jurors who might be holding out for a conviction without a recommendation to mercy, to jurors who might be holding out for a verdict of guilty with a recommendation to mercy, and to those who might be holding out for an acquittal. The trial judge may properly admonish the jury as to the propriety and importance of agreeing on a verdict, and may urge them to make every effort to harmonize their views and to agree on a verdict consistent with their consciences, care being taken not to suggest what verdict is proper, or to give instructions having a tendency to coerce the jury into agreeing on a verdict, or inviting them to disagree. The judge may urge, as reasons for agreeing on a verdict the time and expenses involved in the trial, and the time and expense which a new trial will entail. 16 C. J. 961 [§ 2351] (2). So we are of the opinion that the statement of the judge with which we have been dealing was not calculated to impress the jury with the fact that the judge entertained doubt as to their qualifications to try the case, or to interfere with the conscientious opinions of the different jurors, and was not such as to intimidate the jurors from entertaining their individual opinions as to the law and facts of the case, and was not calculated to cause the jurors to surrender their conscientious convictions in the matter. For this reason a new trial should not be granted on account of this statement.

■ Counsel for the defendant urge with zeal and earnestness that the verdict is not supported by the evidence, and that for this reason a new trial should be granted. The evidence for the State is substantially as follows: The little girl alleged to have been assaulted and raped and her brother were returning home from school on the day the rape was alleged to have been committed.

The girl was between six and seven years of age. Her brother was between eight and nine years old. When they reached home they were both screaming and had been crying. Their mother asked them, "What on earth is the matter?" The little girl said, "An old negro kissed me right up there, and pulled my clothes off." The mother testified that she made an examination of the girl's private parts, that she was bruised on the inside, that she could not stand to have the medicine applied that the doctor left to be used, that there was swelling, that before this there was nothing wrong with her private parts, and that there was no tear or break, but she was bruised and swollen.

Hardy Shivers, the brother of the little girl, testified: Q. You remember that after—now did anything happen to you and your little sister, Latrelle, before you got home? A. No sir, but he went along and was talking to us. Q. Who? A. That negro. I had seen him before that afternoon when he was there. I have seen him in the jail-house. The one that I saw in the jail-house is the same one that was going along with me and my little sister that afternoon. The first time I saw him was when my sister and I were coming along from school. He was coming over a way leading from the negro quarters to the creamery. He came on where my little sister and me were. When he came up there, I started to walking faster, and he did too. He started to talking to us. He started after her a few times, and he said he would get her. I don't know what the first thing he did say. After he kissed her he said he wanted a piece of pussy. Then he pulled off her bloomers and kissed her. Then he got out his "pee pee." He took her down on the ground. He took her down first at the branch, partly in the road. After she got up from there she crawled under the fence and got into the cotton-field. He got her and kissed her. He put her on the ground in the cotton-field. I beat him on the back with my fists. When he got up he started back to her a few times. He then started back to the road and got over the fence. I and my little sister went home and told my mother about it.

Alexander Story testified: I got my information of the offense charged against the defendant on the same day of the occurrence. I was not present when the boy was arrested. Mr. Hobby arrested him. I brought him around in the jail there with Mr. Hobby and

Mr. Shingler. The defendant made a statement. I just asked him about it before them. He had a·buckshot in his neck, and I had a doctor to come and get the shot out. I asked him about it, and he said he and his little brother and another boy were digging stumps up there by Mr. John Storny's place. He said he was going up there and saw the boy and little girl. He said they were down at the bridge and looking in the branch. He said he took hold of the little girl and pulled her bloomers down, and got down on her and kissed her, and then he took her and carried her in the field and laid her down there by the terrace and got down on her again. I asked him did he get it in, and he said "yes," and measured on his finger like that, a half or three quarters of an inch. I asked him what he did. He said he buttoned up his pants and went on across the field. I asked him why he was shot. He said he was sitting on a stump, and a man came up and throwed his gun on him, and he ran, and the man shot him. I asked him why he ran, and he said he knowed he had done wrong and he ran. I asked him if there was any discharge, and he said there was. He said he reckoned what became of it was that it was up there in the field dried up. I heard the statement of the little girl's brother about where it occurred. I went there and made an examination. There were three tracks there, two children's tracks and a man's tracks. The children's tracks were all around there. It looked like where they stomped all around there on the ground, and the man's tracks did not seem to scuffle so much. It looked like that some one had been lying on the ground in the cotton-field, and the man had either been down on his knees or lying flat on his face, for the toes of his shoes dug holes in the soft dirt, and you could see it.

The defendant made this statement: "Well, I did not do it. I was playing with the little girl when I seed the girl. I was playing with the girl. They say I tried to do other things to her when I was playing with the little girl. Chief Hobby and Mr. Story and the little boy and the little girl and the mayor of the town come· up in there and asked me what did I do to the little girl, and Chief Hobby told me to tell them what did I do to her, and I up and told them. I done that to keep from getting hurt."

Dr. J. H. Baxter, testified for the defendant: I have been a practicing physician of this county for twenty-one years. I was

called on to make an examination of Latrelle Shivers, and did make an examination of her private parts, about one hour, I think, after the occurrence. I saw no bruises or lacerations about her private parts. I saw no abnormal condition. I did not examine inside. I did not examine into the privates. My examination was external. I did not examine the vulva. I did examine the vagina. I did not find bruises. I was again called two or three days later. I found no swelling or laceration of the private parts. They appeared to be perfectly natural.

No further evidence was introduced by the defendant.

Under the evidence introduced by the State, the jury were authorized to find the defendant guilty. This being so, the contention of counsel for the defendant that the verdict was without evidence to support it is not well founded.

*Judgment affirmed. All the Justices concur, except*
RUSSELL, C. J., who dissents from the rulings in divisions 2, 4, and 5.