## JONES *v*. THE STATE.

No. 18141. Argued March 9, 1953—Decided April 13, 1953

*Frank Oliver Downing,* for plaintiff in error.

*Andrew J. Ryan Jr., Solicitor-General, Sylvan A. Garfunkel, Thomas M. Johnson Jr., Eugene Cook, Attorney-General,* and *Rubye G. Jackson,* contra.

CANDLER, Justice. Ozzie Jones was indicted for rape in Chatham County, under Code § 26-1301. He was convicted and sentenced to be electrocuted. In due time, he filed a motion for new trial on the usual general grounds, which was later amended by adding several special grounds. His amended motion was overruled, and the exception is to that judgment.

The State's evidence tended to show: The victim, a white girl, worked as a day-waitress in the restaurant and package shop of Keeny Ganem on West Bay Street in Savannah, Georgia. She occupied a cabin back of her employer's place of business, living alone. The defendant's wife worked as a cook at the same place, and was usually on duty until midnight. The defendant came to Ganem's place of business about 11:15 or 11:30 on the night of July 11, 1952, and inquired for his wife. To get rid of him, Ganem told him that she was not there, which was in fact not true. He came back twice afterwards on the same night before 12 o'clock and each time inquired about his wife. On his last visit, Ganem told him that she might be checking the cabins. At that time he purchased a half-pint of "Seagram's Seven Crown" whisky. He finally left Ganem's place of business about five minutes before midnight. He went from there to the victim's cabin, knocked at the door, and she opened it, thinking he was the colored cook (the defendant's wife), who had promised to bring her some food when she quit for the night. He caught the victim, choked her with his hand, overpowered her, pushed her back on the bed, and after considerable struggle had intercourse with her forcibly and against her will. He then demanded her purse, and when informed by her that it had been left at the restaurant, he struck some matches in his search for it, throwing the stems on the floor. He could be seen distinctly when the matches were struck. The victim reported the occurrence immediately afterwards to her employer, who in turn informed the officers about it. The victim, at that time, gave her employer and the officers a detailed description of her assailant and his clothing, and stated that his pants fastened in front with snaps, not buttons or a zipper. She was carried to a hospital and the examining physician found live sperm in the mouth of her womb, indicating recent intercourse. Police officers saw the defendant at a place on Bay

Street, near Ganem's restaurant, about 11:45 or 11:55 on the night of July 11, 1952. He was at that time noticeably under the influence of whisky. When arrested at about 4 a.m. on July 12, 1952, the clothes he then had on corresponded exactly with the description of them previously given by the victim, including the snaps which fastened the front of his pants. A box of "Diamond Safety Matches" was found in his pocket. Match stems picked up in the victim's room were of that kind. When arrested, he had on peculiar shoes with block-shaped soles which "grip on the ground" like golfer's shoes. By comparison, they made tracks exactly like those found at the victim's cabin. An empty half-pint whisky bottle labeled "Seagram's Seven Crown" was found near the victim's cabin. The victim on seeing the accused, immediately after his arrest, positively identified him as her assailant. The assault occurred in Chatham County, Georgia. The accused, in his statement to the jury, denied his guilt and stated that he had been circumcized on June 20, 1952, and that it would have been physically impossible for him to have had sexual intercourse on the night of July 11, 1952. He stated to the jury that he had left the section in which Ganem's place of business was located, had gone to the opposite side of the city, and was at the home of his mother-in-law long before the time the victim fixed as the hour of her rape. In rebuttal, the State introduced the testimony of a physician which tended to show that the accused could have engaged in an act of sexual intercourse on July 11, 1952, having recovered sufficiently from his operation. The accused was picked up by a taxicab driver, near Ganem's restaurant on West Bay Street, soon after 12 o'clock on the night of the alleged rape, who carried him to his mother-in-law's home on the opposite side of the city from Ganem's restaurant. Other than his statement, the accused offered no evidence.

■ After the jury had deliberated for several hours, the judge, at the conclusion of a second recharge, remarked to them: "Gentlemen, I hate to keep you and inconvenience you, but I must ask the jury to return a verdict in the case. You may retire." This remark is assigned as error. It is alleged by the movant that "This [remark] coming at the end of the court's last recharge to the jury was error in that it pressured the jury into

a quick verdict of guilty, and that the jury upon retiring rendered a quick verdict of guilty, which was not in keeping with justice, equity, and full protection of the laws." We do not agree to this. The judge, in his regular charge and in recharges, had stated to the jury that, if they convicted the accused of the offense charged, the death penalty would be imposed upon him unless they recommended mercy; but that they could, in the event of his conviction, impose upon him the lesser punishment prescribed by the statute under which he was indicted, instructing them fully concerning the latter punishment and how it should be expressed by their verdict. He had also charged them that, if the evidence, after giving the defendant's statement proper consideration, did not show his guilt to a moral and reasonable certainty and beyond a reasonable doubt, it was their duty to acquit him. By the expression complained of, the judge did not indicate to the jury which one of these three verdicts should be returned by them; he simply asked them to return a verdict in the case, without making any intimation as to what the evidence was or what it showed, the effect which should be given to it by the jury, or what credit should be given to the defendant's statement. He had before said to the jury: "Now, gentlemen, in order to reach an agreement, each man has to satisfy his own conscience. You all have ideas, but you discuss your ideas, and do not be bull-headed about it, but listen to what the other fellow has to say—to any reasoning he may give—and then when you do that you reach your verdict; but no matter how you consider it, every man has to agree to it." Counsel for the accused argues that the complained-of remark produced a quick verdict of guilty without any recommendation of mercy. We think counsel for the State might have argued with equal logic that it amounted to a request from the court for a not-guilty verdict in the event of further indecision by the jury. Presumptively, the jury was composed of upright and intelligent men, and we will not by mere speculation conclude otherwise. As we view the remark, it amounted to no more than a statement by the judge to the jury that it was their duty to make a verdict in the case; and this court by a full bench held in *Gambo v. Dugas*, 145 *Ga.* 614 (89 S. E. 679), which was cited with approval in *Yancy v. State*, 173 *Ga.* 685, 691 (160

S. E. 867), a rape case, that it was not error to instruct the jury that it was their duty to agree on a verdict. *Chandler* v. *State,* 124 *Ga.* 821 (3) (53 S. E. 91), is ample authority for saying emphatically in this case that it is the duty of the jury to agree and not to disagree.

■ In another special ground of the motion for new trial, error is assigned upon the following part of a sentence in the judge's second recharge to the jury: ". . and it seems to me that it should not be exceedingly difficult to reach a verdict and tell what punishment you would give." As the record shows, this excerpt, not understandable in itself, was the concluding part of a lengthy sentence in which the judge had given the jury the rules to be followed by them in an effort to reach a verdict; it was uttered by the judge after he had fully charged the law applicable to the case, and subsequently to his instruction to the jury on the effect which it had a right to give to the defendant's statement. It is alleged by the movant that the quoted words "pressured" the jury into returning a verdict of guilty. It is settled by several prior rulings of this court and of the Court of Appeals that no question for review is presented by such a special ground. An excerpt from the charge or from a recharge of the court which is, as here, a mere fragment of a sentence is too incomplete to be considered by a reviewing court. Code, § 70-207; *Holland* v. *Williams,* 126 *Ga.* 617 (2) (55 S. E. 1023); *Kennedy* v. *Hagans,* 132 *Ga.* 503 (64 S. E. 330); *Price* v. *State,* 170 *Ga.* 294 (3) (152 S. E. 572); *Waddell* v. *State,* 29 *Ga. App.* 33 (3) (113 S. E. 94). But even if it could be said in this case that the assignment of error properly presents a question of jury coercion, the excerpt complained of would not require a reversal of the judgment presently under review. In *Golatt* v. *State,* 130 *Ga.* 18 (60 S. E. 107), a murder case, this court held that the trial judge, after recharging the rules which should guide the jury in reaching a verdict, did not unduly urge them to find a verdict in further recharging: "But under the law which I have already given you in charge, you should have no trouble in agreeing." For similar expressions, held not to be error, see *Allen* v. *Woodson,* 50 *Ga.* 53, 63; *Parker* v. *Georgia Pac. R. Co.,* 83 *Ga.* 539 (10 S. E. 233); *Chandler* v. *State,* supra; and *Gambo* v. *Dugas,* supra. In the case last cited, Gambo

complained of the following: "If you follow the principles of law given by the court, you ought not to have any trouble in agreeing on a verdict." And in the *Parker* case, supra, it was held that the trial judge had a right to volunteer an additional charge or to recharge the jury on the general rule as to finding a verdict according to the preponderance of the evidence; that the judge did not err, after giving this rule, in adding that by observing it the jury would, in his opinion, have no difficulty in arriving at a verdict; and that such instruction did not intimate what the evidence was, or· its effect, or which party ought to prevail.

■ As requested by the foreman, the judge in his first recharge instructed the jury, as he had in his regular charge, as to the punishment for rape and as to verdict forms in the event of a conviction by them for that offense. He then stated, "Those are the only two forms of verdict of guilty." He also, as he did in his regular charge, gave them a form for a not-guilty verdict in the event of an acquittal. But it is alleged by the movant, in one of the special grounds of his motion for new trial, that the latter form was not given by the judge in his recharge to the jury until "approximately" five seconds had elapsed after the first forms were given, and not until such not-guilty form was requested by counsel for him. Error is assigned upon the judge's failure in his recharge to give to the jury promptly a form for a not-guilty verdict, and it is earnestly argued that the accused was thereby injured. The judge had in his regular charge given the jury a form for their verdict in the event of an acquittal, and there is manifestly no merit in this assignment of error. Human action has not yet reached perfection, even in the conduct of litigation.

■ As shown by the facts reported in our statement of the case, the verdict was amply supported by competent evidence; and the jury was fully authorized to find that the victim's testimony was sufficiently corroborated by facts and circumstances independent of her testimony which tended to show the guilt of the accused; accordingly, the general grounds of the motion are not meritorious. And while the remaining special grounds of the motion have not been argued, or otherwise insisted upon, and under repeated rulings of this court may for that reason be

treated as abandoned, nevertheless, they have been carefully examined by us and found to be, like the general grounds, wholly without merit.

The judgment complained of is, therefore, not invalid for any reason assigned.

*Judgment affirmed. All the Justices concur, except Head, J., who dissents, and Atkinson, P. J., not participating.*